Shane Carew, P.S.
ABA 9407067
5450 California Avenue S.W.
Suite 101
Seattle, WA 98136
Tel: 206.587.0590
Fax: 206.587.2388
shane@carewlaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

ANTHONY MORAN,
    Plaintiff,

vs.

ESTATE OF AASE,
    Defendant

CASE NO. J02-011 CV (JWS)

**DECLARATION OF CAREW RE OPPOSITION TO MOTION TO AMEND**

SHANE CAREW declares,

1. I am over the age of 18 and competent to testify. The following testimony is based upon my personal knowledge.

2. I am counsel for the Estate of Carl Aase. I took the deposition of plaintiff Anthony Moran in Petersburg eleven days ago on March 9, 2006, not 2004 as is indicated in the transcript.

3. Attached are true and correct excerpts from the transcript that was e-mailed to me by the court reporter, Jacqueline L. Bellows. I acknowledge that

Moran v. Estate of Aase
Dec. of Carew
J02-011 CV(JWS) - 1

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

1  plaintiff's time to review the transcript has not expired, but the excerpts attached
2  hereto appear to be accurate based upon my independent recollection and notes.
3
4  I DECLARE UNDER PENALTY OF PERJURY ACCORDING TO THE LAWS OF
5  THE STATE OF WASHINGTON THAT THE ABOVE AND FOREGOING IS TRUE
6  AND CORRECT.
7       Dated this 20th of March, 2006, at Seattle, Washington.

Shane C. Carew
Alaska Bar No. 9407067
Counsel for Defendant
Tel: 206.587.0590
Fax: 206.587.2388
shane@carewlaw.com

Moran v. Estate of Aase
Dec. of Carew
J02-011 CV(JWS) - 2

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

Anthony Moran, 3/9/2006

```
            UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF ALASKA
                      AT JUNEAU
_____

                            )
ANTHONY MORAN,              )
                            )
        Plaintiff,          )
                            )
   vs.                      )   No. J02-011 CV (JWS)
                            )
ANGELA AASE ELAM, in her    )
                            )
capacity as the administrator )
                            )
of the estate of Carl Aase, )
                            )
        Defendants.         )
_____

          DEPOSITION UPON ORAL EXAMINATION

                         OF

                    ANTHONY MORAN
_____

                      9:15 a.m.

                   March 9, 2004

                 Scandia House Hotel
                110 North Nordic Drive
               Petersburg, Alaska 99833


                JACQUELINE L. BELLOWS
                      CCR 2297
```

Anthony Moran, 3/9/2006

Page 2

# INDEX OF EXAMINATION

Page
----

Examination

    By Mr. Carew ------------------------------------ 4

    By Mr. Reeves ----------------------------------- 75

# INDEX OF EXHIBITS

| No. | Description | Marked | Identified |
| --- | --- | --- | --- |
| 1 | Application for Compensation, 1-28-02 | 16 | 16 |
| 2 | Addendum, 12-17-99 | 35 | 35 |
| 3 | Letter, 7-1-99 | 38 | 38 |
| 4 | Letter, 7-19-99 | 40 | 41 |
| 5 | Recommended Decision, 1-22-03 | 42 | 43 |
| 6 | Application License Limitation Program, 12-14-99 | 51 | 51 |
| 7 | Notice of Opportunity to Submit Evidence, 12-22-99 | 51 | 51 |
| 8 | Handwritten Note and Request for Release of Fish Ticket Data | 60 | 61 |
| 9 | Statement in support of Application, 1-22-02 | 71 | 71 |
| 10 | Letter, 4-5-02 | 72 | 72 |
| 11 | Compensation Plan | 72 | 73 |
| 12 | Letter, 2-27-03 | 74 | 74 |

Anthony Moran, 3/9/2006

Page 3

```
 1                        APPEARANCES
 2
 3   For the Plaintiff:
 4                        JAMES REEVES
                          DORSEY WHITNEY
 5                        1031 West Fourth Street 600
                          Anchorage, Alaska 99501-5907
 6
 7
     For the Defendants:
 8
                          SHANE CAREW
 9                        Attorney at Law
                          5450 California Avenue SW, Suite 101
10                        Seattle, Washington 98136
11
12
     Also Present:        ANGELA ELAM
13                        BRYON ELAM
14   Court Reporter (Via Telephone):
15                        JACQUELINE L. BELLOWS
                          VAN PELT, CORBETT BELLOWS
16                        423 Second Avenue Extension S., #21
                          Seattle, WA 98104
17
18                  * * * * * * * * *
19
20
21
22
23
24
25
```

Anthony Moran, 3/9/2006

Page 4

1  ANTHONY MORAN,              having been first duly sworn
2                              by the Notary Public, appeared
3                              and testified as follows:
4
5                    E X A M I N A T I O N
6  BY MR. CAREW:
7  Q    Mr. Moran, what is your full name?
8  A    Anthony Pius Moran.
9             MR. CAREW:  Were you able to hear that?
10            THE REPORTER:  It was a little soft.
11            How do you spell Pius?
12            THE WITNESS:  P-I-U-S.
13 Q    Mr. Moran, your deposition was taken on October 28th,
14      2004.  Has your address changed since that time?
15 A    No.
16 Q    Are you under any medication at this time?
17 A    No.
18 Q    Are you all rested?
19 A    Yes.
20 Q    Any reason why you can't testify today?
21 A    No.
22 Q    First, I want to talk about your fishing background and
23      history in the fishing industry.  You owned a 32-foot
24      boat called the LITTLE FISH at one time?
25 A    Yes.

| | | |
|---|---|---|
| 1 | A | No. |
| 2 | Q | Now, Mr. Pederson is from Petersburg, is he? |
| 3 | A | Yes. |
| 4 | Q | Did you also get an emergency transfer of his permit in |
| 5 | | 2002? |
| 6 | A | I think that was correct. |
| 7 | Q | Could you be a little more specific about the type of |
| 8 | | permit that was. What kind of crab and where? |
| 9 | A | Brown and red king crab. |
| 10 | Q | How about tanner crab? |
| 11 | A | No. |
| 12 | Q | So there are different permits for different species; is |
| 13 | | that correct? |
| 14 | A | Yes. |
| 15 | Q | Do you know what a K-69 permit is? |
| 16 | A | I think I do. |
| 17 | Q | Okay. What's your understanding of a K-69 permit? |
| 18 | A | I think it's all-inclusive. |
| 19 | Q | So that would be a permit for Southeast Alaska for |
| 20 | | brown, red -- red king crab and tanner crab? |
| 21 | A | Yes. |
| 22 | Q | Now, when you made application for Glacier Bay |
| 23 | | Commercial Fisheries Fishing Program compensation as a |
| 24 | | permit holder, did you own a permit for fishing crab in |
| 25 | | Southeast Alaska? |

| | | |
|---|---|---|
| 1 | A | No. |
| 2 | Q | When you made your application, did you want the National Park Service to think that you owned a king crab permit at the time? |
| 5 | A | No. |
| 6 | Q | Was it your understanding that that was a requirement in order to get Glacier Bay compensation at the time you made the application? |
| 9 | A | Yes. |
| 10 | Q | Do you remember if you attached a copy of a -- well, first of all, what do the initials CFEC mean to you? |
| 12 | A | Commercial Fishing Entry Commission. |
| 13 | Q | Do you remember whether you attached a CFEC permit with your application? |
| 15 | A | I can't remember. |

              MR. CAREW:  Mr. Reeves, I'd like to state, for the record, I made a mistake in marking exhibits. Under the local rules we have to put a stamp on, I understand, stating the case title, the case name, then the exhibit number and then the pages.  I did not do that properly.

              I would ask that we can hopefully work this out after the fact.  I'll be giving you the exact exhibits that I'm handing the witness and would like to be able to mark them appropriately later.

```
 1              That's something, perhaps, we could deal with
 2         off the record; but I just wanted to alert you to
 3         the fact that these are not appropriately marked at
 4         the time.
 5              MR. REEVES: Okay. Counsel, if you are going
 6         to ask him about the document, I believe he's
 7         entitled to look at the document.
 8              MR. CAREW: Absolutely.
 9              THE REPORTER: Mr. Reeves, I'm losing you.
10              MR. CAREW: We just established that I am
11         going to be allowing the witness to look at the
12         document first.
13              [Deposition Exhibit No. 1 marked.]
14   Q     (By Mr. Carew) Mr. Moran, I'm handing you what's been
15         marked Exhibit 1. And I'll ask you to take a moment to
16         review Exhibit 1. Then I'll ask you some questions
17         about it.
18              Could you identify Exhibit 1, Mr. Moran?
19   A     Yes, I can.
20   Q     What is Exhibit 1?
21   A     It's my application for compensation for Glacier Bay.
22   Q     Did you sign that, stating that you affirmed the
23         statements were the truth, to the best of your
24         knowledge?
25   A     Yes.
```

| | | |
|---|---|---|
| 1 | Q | You signed that before a notary public? |
| 2 | A | Yes. |
| 3 | Q | I'd like to direct your attention to paragraph six. Can |
| 4 | | you read paragraph six for the record, please. |
| 5 | A | Read it out loud? |
| 6 | Q | Out loud, yes. |
| 7 | A | "Fisheries for which compensation is being sought: |
| 8 | | Tanner crab. A copy of my CFEC permit for red, blue, |
| 9 | | brown, king pot is attached. I am a current owner of an |
| 10 | | Alaska limited entry permit." |
| 11 | Q | Now, and attached appears to be a permit card; is that |
| 12 | | correct? A copy of a permit card? |
| 13 | A | Yes. |
| 14 | Q | Now, what permit card is that for? I mean, what permit |
| 15 | | is that attached to? What is this? |
| 16 | A | Oh, the copy is unreadable. |
| 17 | Q | Okay. Do you have any recollection of which permit card |
| 18 | | you submitted? |
| 19 | A | I'm not certain. I can't read it. I'm not certain. |
| 20 | Q | Now, you say "a copy of my CFEC permit for red, blue, |
| 21 | | brown, king pot is attached." At that time you didn't |
| 22 | | own a permit for red, blue, brown, king crab, did you? |
| 23 | A | That's correct. |
| 24 | Q | How could you have attached a copy of a CFEC permit for |
| 25 | | red, blue, brown, king crab if you didn't own one? |

| | | |
|---|---|---|
| 1 | | Weyhrauch is representing me. |
| 2 | Q | What's the date of that document? |
| 3 | A | July 1, 1999. |
| 4 | Q | And is it your recollection that you had, indeed, |
| 5 | | retained Bruce Weyhrauch at that time? |
| 6 | A | I guess that's correct. |
| 7 | Q | I mean, there's no reason to believe that he |
| 8 | | spontaneously sent this letter without having conferred |
| 9 | | with you? |
| 10 | A | Yes. |
| 11 | Q | So now, back in July of '99, wasn't it fair to assume |
| 12 | | that there was going to be some compensation based upon |
| 13 | | catch history? |
| 14 | A | I'm not certain. |
| 15 | Q | Well, you knew that there was going to be some |
| 16 | | compensation that was going to be distributed related to |
| 17 | | those permit holders or boats that fished in Glacier |
| 18 | | Bay, didn't you? |
| 19 | A | I think so. I assume so, yes. |
| 20 | Q | Wasn't it fair to assume that it was going to be based |
| 21 | | upon the catch history of boats that had already fished |
| 22 | | in Glacier Bay? |
| 23 | A | I assume so. |
| 24 | Q | And you were so acutely aware of this that you actually |
| 25 | | hired and paid an attorney to represent you, to make |

```
1         sure that you could get these compensation rights?
2    A    That's correct.
3    Q    You wanted, at that time you wanted to make sure you
4         could maximize your recovery from the Glacier Bay
5         Compensation Program, correct?
6    A    I'm uncertain what transpired seven years ago, exactly.
7         So when I say "I'm uncertain," I am uncertain.
8    Q    But you don't know whether your motivation in going out
9         and hiring that attorney to represent you trying to
10        collect Glacier Bay compensation, wasn't your motivation
11        to maximize what you could get from the Glacier Bay
12        compensation?
13              MR. REEVES:  Object to the form of the
14        question.
15   A    Could you ask me that again, please.
16   Q    (By Mr. Carew) Wasn't the reason that you hired an
17        attorney to represent you at this time, at this early
18        stage, to make sure that you could maximize the amount
19        you could recover from the Glacier Bay Compensation
20        Program?
21   A    Yes.
22              [Deposition Exhibit No. 4 marked.]
23   Q    (By Mr. Carew) I'm going to hand you what's been marked
24        Exhibit 4 and ask you to take your time and review
25        Exhibit 4.  And I'll ask you later, after you've
```

```
1    A    Yes.
2    Q    Now, when you made your application to the agency, you
3         had -- I'm sorry.  When you had made your application to
4         the National Park Service for the compensation, that was
5         based upon because you thought that you had purchased
6         the fishing rights and not the actual final award; is
7         that right?
8    A    You're going to have to start over with that one.
9    Q    Well, you made your application to the agency.  You made
10        your own application to the agency for compensation; is
11        that correct?  Isn't it?
12   A    I was helped by counsel.
13   Q    Your understanding was it was based upon the fact that
14        you had bought the fishing history of the NORTHWYN; is
15        that correct?
16   A    Yes.
17   Q    Was your understanding that you had bought fishing
18        history and not the final compensation award itself?
19   A    I don't understand.
20   Q    There were at least two things -- well, sorry.  There
21        were two things that you had to show in order to get
22        compensation.  Is that your understanding?
23   A    I think that's correct.
24   Q    You had to show that you currently owned a tanner
25        permit, correct?
```

Page 73

1        MR. REEVES:  Uh-huh.
2        MR. CAREW:  -- in this case.  Okay.
3   Q    (By Mr. Carew) Mr. Moran, I believe your testimony is
4        that you did review the compensation plan before you
5        made out the application?
6   A    Yes.
7   Q    And I direct your attention to the third page of the
8        document, Exhibit 11, regarding eligibility criteria.
9        About half the way down it says:  "Specific to the
10       tanner crab pot fishery."  The second sentence of the
11       paragraph right under "Specific to the tanner crab pot
12       fishery," it says:  "They must also submit a copy of
13       their current State of Alaska limited entry permit for
14       the tanner pot fishery.  This payment will be available
15       to all Southeast Alaska tanner pot permit holders."
16       Do you see that?
17  A    Yes.
18  Q    Now, in layman's terms, what does that mean to you in
19       terms of eligibility criteria?
20       MR. REEVES:  Object to the form of the
21       question.
22  A    I'm uncertain, really, as to what this actually means.
23  Q    (By Mr. Carew) Okay.  So you're uncertain what's meant
24       by the sentence:  "They must also submit a copy of their
25       current State of Alaska limited entry permit for the