Shane Carew, P.S.
Attorney for Defendant
5450 California Avenue S.W.
Suite 101
Seattle, WA 98136
Tel: 206.587.0590
Fax: 206.587.2388
shane@carewlaw.com

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA
### AT JUNEAU

| | |
|---|---|
| ANTHONY MORAN, | ) |
|     Plaintiff, | ) |
| | ) |
|   vs. | )   CASE NO. J02-011 CV (JWS) |
| | ) |
| ESTATE OF CARL AASE, | ) |
| | ) |
|     Defendant | ) |

_____

## DEFENDANT'S  MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING THE CLAIM THAT GBCFCP RIGHTS WERE SOLD WITH THE "ADDENDUM"

### I. RELIEF REQUESTED

Defendant seeks Summary Judgment dismissing the claim that Plaintiff bought any of Carl Aase's Glacier Bay "fishing history" or Carl Aase's actual Glacier Bay individual permit holder compensation with the written ADDENDUM of December 17, 1999.

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 1**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

Moran's argument was presented to the administrative agency, and should have been part of Moran's administrative appeal. Because the agency is no longer a party, however, defendant presents the legal question to Court. [1]

## II. QUESTION PRESENTED

Where Tony Moran drafted a contract called ADDENDUM which specifically referenced the sale of vessel moratorium and License Limitation Program (LLP) rights, and did not include reference to Glacier Bay fishing history or rights, and Moran only discussed vessel moratorium and LLP rights, and did not discuss GBCFCP rights, did the sale include Carl Aase's right to $581,739.08 of GBCFCP compensation?

## III. RELEVANT FACTS

1. Tony Moran and Carl Aase fished out of the same port, Petersburg. Tony Moran has 20 years experience there. Carl Aase owned and operated the fishing vessel NORTHWYN in the 1980's and 1900's.

2. On **May 5, 1999**, the vessel NORTHWYN, was sold at Marshal's auction when the mortgagee, Northwest Farm Credit, foreclosed on it. Tony Moran bought the NORTHWYN for $25,500.00, and proceeded

_____

[1] *Winther v. Samuelson,* 10 P3d 1167(Alas. 2000) was a dispute between two individuals who had shared a partnership interest in a vessel over the award of IFQ. The parties each applied to the federal agency (National Marine Fisheries Service) for the IFQ. One party was denied IFQ, and pursued his administrative appeal while at the same time filing suit in state court. The Alaska Supreme Court deferred to the federal administrative agency adjudication based on the doctrine of collateral estoppel.

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - **2**                    CAREW LAW OFFICE
                                        5450 California Avenue SW, Suite 101
                                        Seattle, Washington  98136
                                        Telephone: (206) 587-0590
                                        Fax: (206) 587-2388

immediately to make $93,000 in the remaining months of that year. Exhibit A.  The vessel is worth in excess of $200,000. Exhibit B-2.

3. On **May 21, 1999**, the $23 million funding for the Glacier Bay Commercial Fishing Compensation Program was authorized by Section 501 of the 1999 Emergency Supplemental Appropriations Act (Public Law 106-31).

4. Mr. Moran assumed that the Glacier Bay compensation for tanner crab permit holders was going to be based upon their history of catching Tanner crab in Glacier Bay. Exhibit B-3.

5. Likewise, Mr. Aase was also aware of the Glacier Bay program. He assumed that his compensation would actually be over a million dollars. Dkt. 31, Dec. of Carl Aase, p. 3.   Carl Aase's Tanner crab record in the Glacier National Park was without peer.  His history garnered him 5 times the award of the average permit holder. Exhibit C

6. By **July 1, 1999**, Moran had hired counsel (Ex. B-3, B-4) to maximize his potential Glacier Bay Compensation Program recovery. Exhibit B-4).

7. In mid-December, 1999, Plaintiff Moran contacted Carl Aase and presented Mr. Aase with a written contract plaintiff drafted, which he titled "Addendum".   The ADDENDUM was signed by both parties on **December 17, 1999.** Dkt. 23, Exhibit 1.

8. Mr. Moran specifically referenced in the ADDENDUM the "vessel moratorium" and License Limitation Program (for Central Gulf groundfish), but did not include any written reference to the GBCFCP.   Dkt. 23, Ex. 1. The parties do agree that rights arising from the <u>vessel's</u> history of catching

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 3**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

groundfish, in the Central Gulf of Alaska, under the North Pacific License Limitation Program (50 C.F.R. § 679.4(k)) ("LLP Program"), were transferred with the ADDENDUM.  As a result of the application and the ADDENDUM, Mr. Moran now holds a license for the vessel for non-trawl gear for the central Gulf of Alaska area.

9.  Mr. Moran testifies he and Mr. Aase had three or four conversations in December 1999 about the ADDENDUM.  What Mr. Moran remembers of the conversation was "I remember that he wanted a large sum of money **_for sale of the LLP_**."  Exhibit D-2 (emphasis added).  How much was large? $35,000.00.   Instead, Mr. Moran offered Mr. Aase $3,000, which Carl accepted.  Exhibit D-2.  They did <u>not</u> discuss GBCFCP rights at the time.  Exhibit D-3.

10.  On **January 28, 2002**, Mr. Moran applied to the National Park Service for Tanner crab permit holder compensation under the GBCFCP. *See,* Exhibit E

11.  On **April 5, 2002**, Moran's application for permit holder compensation was denied by the agency. Dkt 23, Ex. 3.

12.  On **May 6, 2002**, Anthony Moran filed this lawsuit against Carl Aase.  Dkt. 1.

13.  On **May 24, 2002**, Mr. Moran's appeal from the agency denial states "<u>After</u> Mr. Moran purchased the NORTHWYN, he and Mr. Aase signed an Agreement, which was called 'ADDENDUM.' **<u>Under that agreement</u>**, Mr. Aase sold all the fishing rights or fishing history of the F/V NORTHWYN to Mr. Moran." (emphasis added)  Exhibit F-3.

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 4**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

14. On **September 11, 2002**, Mr. Moran added the United States as a party in this lawsuit.  Dkt. 10.

15. In Moran's initial complaint (Dkt. 1, par. 7), and his amended complaint which joined the U.S. (Dkt. 10, par. 8) Moran alleges Carl Aase "agreed to sell the plaintiff all the fishing rights or fishing history of the F/V NORTHWYN **in the ADDENDUM agreement**...".

## IV. LAW AND ARGUMENT

Plaintiff Moran's initial position in his administrative appeal, Complaint, and First Amended Complaint, was that the ADDENDUM transferred the right to the GBCFCP compensation.   The testimony and exhibits herewith show there is no issue of fact regarding whether the GBCFCP rights or compensation were transferred with the ADDENDUM.

> Differences of opinion among the parties as to their subjective intent, expressed during the litigation, <u>do not establish an issue of fact</u> regarding the parties' reasonable expectations at the time they entered into the contract, since such self-serving statements are not considered to be probative.

 *Norville v. Carr-Gottstein Foods Co.,* 84 p.3D 996, 1003 (Alas. 2004)

**A.      Rule 56**

Summary judgment on an issue must be granted when, after construing the material facts in a light most favorable to the non-moving party, the moving party is entitled to relief as a matter of law.

**B.      As a Matter of Law, Where Tony Moran Did not Manifest an Intent that the ADDENDUM included Carl Aase's Permit Holder History or Glacier Bay Compensation, Those Rights and Privileges Were Not Transferred with the ADDENDUM**

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 5**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

"The court must look to the express manifestations of each party's understanding of the contract in attempting to give effect to the intent behind the agreement." *Peterson v. Wirum*, 625, P.2d 866, 870 (Alaska 1981).   Under Alaska law, which controls, the trial court should disregard subjective impressions or intent at the time of a transaction "<u>unless the party in some way expressed or manifested his understanding at the time of contract formation.</u>"   *Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1003 (Alas. 2004).  As his testimony shows, however, even Tony Moran's subjective understanding expressed at the time of contract formation was that Carl Aase sold LLP rights, not GBCFCP rights.

      1.     *Both Carl Aase and Tony Moran Were Aware of the GBCFCP at the Time of the Sale of the LLP*

Tony Moran was so acutely aware that the GBCFCP award was going to be based upon fishing history that he hired and paid counsel to make sure he could get and maximize the compensation rights.  Exhibit B-4 and B-5.  The ADDENDUM was presented to Carl Aase, after Mr. Moran had retained counsel, on December 17, 1999.

Mr. Moran assumed that the Glacier Bay compensation to permit holders was going to be based upon their history of catching Tanner crab in Glacier Bay. Exhibit B-4.  Likewise, Mr. Aase was also aware of the Glacier Bay program and that it would be based on historical catches.  *See*, Dkt. 31,  Dec. of Carl Aase,  p.3.

Carl assumed that his compensation would actually be over a million dollars, Dkt 31, Dec. Of Aase, paragraph 10.  Carl Aase's record was

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

without peer among the Tanner crab pot fishermen. His compensation was by far the largest; his industry garnered him 5 times more permit holder compensation than the average qualifying permit holder.   Exhibit C.

    Since Tony Moran was aware of the Glacier Bay "rights" that Carl Aase owned, he was under an affirmative duty, if he felt he was buying those rights, to have <u>expressed or manifested his understanding at the time of contract formation.</u>"  *Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1003 (Alas. 2004).

    Since Tony knew about the Glacier Bay Compensation Program, by failing to expressly include it when he expressly included the License Limitation Program, Tony Moran clearly did <u>not</u> buy any Glacier Bay "fishing history" or "fishing rights".  Moreover, under the Alaska Statute of Frauds (AS 45.01.206), enforcement of a sale for personal property is not enforceable if the amount at issue is beyond $5,000.00 in value, unless the writing "reasonably identifies the subject matter."

    2.    *The Written ADDENDUM Was Only About the LLP*

    The language used in the written ADDENDUM was entirely consistent with selling <u>only</u> the "federal vessel moratorium" and LLP rights. They were the only rights specifically mentioned by name.   And the GBCFCP rights were <u>not</u> specifically mentioned.  This is acknowledged by Mr. Moran in his deposition:

35

20    Q    (By Mr. Carew) Is Exhibit 2, what I've handed you there
21          which I'm referring to as Exhibit 2, is that the
22          Addendum that you signed with Carl Aase?

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - **7**                    CAREW LAW OFFICE
                              5450 California Avenue SW, Suite 101
                                 Seattle, Washington  98136
                                 Telephone: (206) 587-0590
                                    Fax: (206) 587-2388

23  A   Yes.
24  Q   Now, at the time in December 1999, around December
        17th,
25      1999, that you and Carl had spoken about this Addendum?


                                 36

1   A   Yes.
2   Q   And is it fair to say that you expressed your
3       understanding to Carl that this Addendum transferred
4       federal vessel moratorium rights?
5   A   **Yes**.
6   Q   Those are specifically mentioned in this Addendum by
7       name, correct?  Is that correct?
8   A   **Yes**.
9   Q   And you also expressed to Carl at that time your
10      understanding that the Addendum also transferred LLP
11      rights?
12  A   **That's correct**.
13  Q   Okay.  Those are specifically mentioned by name in the
14      Addendum; isn't that correct?
15  A   **Yes**.
16  Q   <u>Did you specifically express your understanding to Carl</u>
17      <u>that the Addendum transferred to you rights under the</u>
18      <u>Glacier Bay Compensation Program?</u>
19  A   **No.**  We already discussed the wording of this Addendum.
20  Q   Why did you mention the federal vessel moratorium rights
21      and the LLP program but not the Glacier Bay Compensation
22      Program?
23  A   I'm not certain.


        Whether Mr. Moran truly is uncertain why he didn't include the

Glacier Bay Compensation Program is irrelevant.  The important point for

purposes of this motion is that Moran acknowledges he specifically

expressed his understanding that the ADDENDUM transferred the

moratorium and LLP rights, but did **not** "express" or  "manifest" his

purported understanding that the GBCFCP rights were silently being

transferred as well.   It is impossible that the parties would elaborate on the

transfer of relatively valueless LLP rights, if the purpose was to transfer the GBCFCP rights .

The term "fishing history" arose in the context of the federal License Limitation Program and the Vessel Moratorium Program.   The National Oceanic and Atmospheric Administration (NOAA) administers the License Limitation Program (LLP).  The details of the LLP are described on NOAA's website at  http://www.fakr.noaa.gov/ram/llp.htm.    Basically, in the late 1980's and throughout the 1990's, fishing vessels that caught groundfish, had to have a federal fisheries permit and a federal moratorium certificate. Then in 1998, the government implemented the LLP program, which granted rights to the owners of the vessels that actually fished groundfish up to that time.

Before the LLP program was implemented, there had been many public hearings and publications issued about the program.   Prior to the implementation of the program, in the months and years leading up to the launch of the program, NOAA issued "moratorium" certificates under the Vessel Moratorium Program.   That legislation expired as of December 31, 1999.   The moratorium certificates were representative of a vessel's past fishing history.

> 3.    *The Written ADDENDUM Specifically Excludes Carl's State Limited Entry Permits, and by Implication, The Rights Derived from the State Limited Entry Tanner Crab Permit*

The parties understood clearly that the ADDENDUM didn't include Carl's IFQ (for halibut and sablefish) or state limited entry Tanner crab

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

permit.  This point is acknowledged by both Moran (Dkt. 33, p. 20)[2] and the

Court. (Dkt. 35, p. 2).  It is inconsistent and illogical that Carl would agree

that his $250,000 Tanner crab permit was expressly excluded, but the right

to $1 million would be conveyed with the LLP rights for $3,000.00.    Carl

was keeping his Tanner crab limited entry permit and obviously all the

rights associated with it.   The Glacier Bay compensation was based on

ownership of the <u>permit</u>.  Clearly, Carl kept both and didn't sell either.

> 4.    *Moran's Contemporary Verbal Communication Was Only*
> *About LLP, and not Glacier Bay*

Mr.  Moran's  memory  of  the  conversations  surrounding  the

ADDENDUM makes it clear that both parties believed they were dealing

solely with sale of LLP rights:  "I remember that he wanted a large sum of

money ***for sale of the LLP***."  Exhibit D-2 (emphasis added).  The large

sum of money Carl Aase asked for the sale of the LLP was $35,000.00.

Instead, Moran offered him $3,000, which Carl Aase accepted, for sale of

the LLP. Exhibit D-2

Carl Aase remembers the ADDENDUM was meant to be a bill of

sale for the LLP rights. Dkt. 31, Dec. of Aase, paragraph. 7.

Mr. Moran has a specific recollection that he did <u>not</u> talk about the

GBCFCP  with Carl Aase in December, 1999.  Exhibit  D-3.

> 73
> 9   Q.    Now, let -- at the time of your
> 10    conversations with Carl Aase in December of 1999, do
> 11    you have a specific recollection that you did not talk

---

[2] "The addendum appears to exclude 'any State Fishing Permits or IFQ's
currently held' by Mr. Aase." *Moran's Opp. to Motion to Set Aside Default.*

**MORAN v. ESTATE OF AASE**               CAREW LAW OFFICE
**J02-011CV (JWS) - 10**                  5450 California Avenue SW, Suite 101
                                          Seattle, Washington  98136
                                          Telephone: (206) 587-0590
                                          Fax: (206) 587-2388

12    about the Glacier Bay Compensation Program?
13        A.    **We did not.**

## C.    SUMMARY

1.    At the time of drafting the ADDENDUM, Tony Moran knew about the GBCFCP.

2.    By the time the ADDENDUM was drafted, Tony Moran had already hired an attorney for the purpose of maximizing his GBCFCP recovery.

3.    The ADDENDUM only referenced federal programs related to central Gulf of Alaska ground fish.

4.    Carl Aase was aware at the time of entering into the ADDENDUM agreement that he was likely going to be a recipient of a large sum of money from the GBCFCP based on his Tanner crab permit and catch history.

5.    Tony Moran recalls the contemporaneous conversation was for the "sale of the LLP" and not about GBCFCP rights.

6.    Carl Aase believed the ADDENDUM was for the sale of the LLP.

7.    Moran did not expressly include the GBCFCP in the ADDENDUM as he had the groundfish rights

8.    Moran never contemporaneously stated to Carl Aase that he understood the GBCFCP rights were included with the groundfish rights for $3,000.

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - 11

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

Where both parties are consistent that the $3,000 was for the "sale of the LLP", how can we even be arguing whether the $3,000 included the rights to an additional $581,739.08 GBCFCP compensation?

## V. CONCLUSION

Moran's subjective understanding was the ADDENDUM was "for sale of the LLP". That was Carl's intent also.

Objectively, the ADDENDUM references the LLP rights only and specifically excludes Carl Aase's state limited entry crab permit and his IFQ. There wasn't any written or verbal manifestation of an understanding the ADDENDUM transferred any rights related to the GBCFCP compensation.

If Tony Moran intended to buy Carl Aase's Glacier Bay "fishing history" for Glacier Bay or his GBCFCP compensation and still did not include it in the written ADDENDUM, it was waived. Plaintiff Moran knew it existed, and he didn't include it in the contract. He expressly (in writing and verbally) identified only the "moratorium" and LLP rights related to groundfish.

Defendant's motion for summary judgment must be granted, and the Court must find that the ADDENDUM did not transfer to plaintiff any rights to the GBCFCP compensation.

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 12**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

Dated this 22nd day of March, 2006, at Seattle, Washington.

/s/_____
Shane C. Carew
Alaska Bar No. 9407067
Counsel for Defendant
5450 California Ave. SW, #101
Seattle, WA  98136
shane@carewlaw.com

## CERTIFICATE OF SERVICE

This certifies that on the 23rd day of March, 2006, a true and correct copy of the document was served on:

Bruce Weyhrauch
Law Office of Bruce Weyhrauch, LLC
114 S Franklin Street, Suite 200
Juneau, AK 99801

James Reeves
Dorsey & Whitney LLP
1031 W Fourth Ave., Suite 600
Anchorage, AK  99501

by electronic means through the ECF system as indicated on the Notice of Electronic Filing, or if not confirmed by ECF, by first class, regular mail.

/s/ Shane Carew
Shane C. Carew, ABA #9407067
Shane Carew, PS

**PLEASE NOTE:  BECAUSE THE MOTION AND EXHIBITS EXCEED 25 PAGES,  A PAPER COPY IS BEING MAILED TO THE COURT THIS DAY BY PRIORITY U.S. MAIL.**

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - **13**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388