Shane Carew, P.S.
ABA 9407067
5450 California Avenue S.W.
Suite 101
Seattle, WA 98136
Tel: 206.587.0590
Fax: 206.587.2388
shane@carewlaw.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

ANTHONY MORAN,

    Plaintiff,

vs.

ESTATE OF AASE,

    Defendant

CASE NO. J02-011 CV (JWS)

## DECLARATION OF CAREW RE MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF "ADDENDUM"

SHANE CAREW declares,

1. I am over the age of 18 and competent to testify. The following testimony is based upon my personal knowledge. I am counsel for the Estate of Carl Aase

2. Exhibit A was produced pursuant to a FOIA request and identified by Mr. Moran at his March 9, 2006 deposition as Mr. Moran's application to the GBCFCP regarding tendering.

3. Exhibit B are true and correct excerpts from the transcript that was e-mailed to me by the court reporter, Jacqueline L. Bellows. I acknowledge that

Moran v. Estate of Aase
Dec. of Carew
J02-011 CV(JWS) - 1

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

1  plaintiff's time to review the transcript has not expired, but the excerpts attached
2  hereto appear to be accurate based upon my independent recollection and notes.
3      4.    Exhibit C is a printout from the National Park Service website. Exhibit C
4  found at the following address:
5  http://www.nps.gov/glba/InDepth/learn/preserve/issues/fish/payout/permit-
6  tannerpot.htm
7      5.    Exhibit D is a true and correct excerpt from a deposition taken in an
8  unrelated litigation brought by Mr. Moran against Mr. Aase. The deposition took place
9  on October 28th, 2004 in Juneau. I attended the deposition on behalf of the Estate.
10     6.    Exhibit E was produced pursuant to a FOIA request and identified by Mr.
11 Moran at his March 9, 2006 deposition as his application for Glacier Bay
12 compensation. The attachments to the two-page notarized statement are not
13 included to minimize the number of pages of exhibits.
14     7.    Exhibit F is a copy of counsel's letter dated May 24, 2002 to the National
15 Park Service appealing the agency's denial. The letter was produced pursuant to a
16 FOIA request by the undersigned to the agency.
17 I DECLARE UNDER PENALTY OF PERJURY ACCORDING TO THE LAWS OF
18 THE STATE OF WASHINGTON THAT THE ABOVE AND FOREGOING IS TRUE
19 AND CORRECT.
20     Dated this 23rd of March, 2006, at Seattle, Washington.

Shane C. Carew
Alaska Bar No. 9407067

Moran v. Estate of Aase
Dec. of Carew
J02-011 CV(JWS) - 2

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

# F/V Tacoma Charters

P.O. Box 1191
Petersburg, Alaska 99833

907-772-3745
Fax 907-772-3713

*Support business*
*Tender future*
*Corrected*



The Tendering business that I own has now become negatively affected by commercial fishing restrictions in Glacier Bay.

The future for Crab tendering contracts was just reduced directly proportional to the area reduction and quota reduction.

IF the Crab Permit Buy-back does occur, the amount of boats made available without permits, become available competition for Crab tendering contracts. This becomes a tremendous negative affect on my tendering business by decreasing the value of my vessel and business.

Enclosed you will find documentation of the tender vessel owned (business). Boat Registration enclosed (business license). Tender contract (proof of daily rate paid).

The daily rate for tendering is $1,800.00 per day. The Tanner Crab Season lasts between 10-14 days. The lost future revenues would be between $18,000.00-$25,000.00 per year.

In 1999 my tendering business income was 93 thousand dollars, in 2000 it was 112 thousand, and in 2001 160 thousand showing a growing income. The tendering business is dependent on quota and area to show need by processors for tenders.

I understand and affirm that the statements made by me in this application are in the form of an affidavit and are subscribed and sworn to

Name: <u>Anthony P. Moran</u>       _____ 1/22/02
                                          Signature

Dated: <u>1-22-02</u>

STATE OF ALASKA       )
                      )
FIRST JUDICIAL DISTRICT )

JAN 2 2 2002
Glacier Bay National Park
Juneau Field Office

WITNESS my hand and official seal the day and year in this certificate above written.

_____
Notary Public of Alaska
My Commission Expires: <u>12-04-02</u>

[Notary Seal: LAWLEE A. WEIR, NOTARY PUBLIC, STATE OF ALASKA]

Exhibit A

030052

Anthony Moran, 3/9/2006

```
UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF ALASKA
            AT JUNEAU
```

ANTHONY MORAN,                    )
                                  )
        Plaintiff,                )
                                  )
    vs.                           )    No. J02-011 CV (JWS)
                                  )
ANGELA AASE ELAM, in her          )
                                  )
capacity as the administrator     )
                                  )
of the estate of Carl Aase,       )
                                  )
        Defendants.               )

DEPOSITION UPON ORAL EXAMINATION

OF

ANTHONY MORAN

9:15 a.m.

March 9, 2004

Scandia House Hotel
110 North Nordic Drive
Petersburg, Alaska 99833


JACQUELINE L. BELLOWS
      CCR 2297

Anthony Moran, 3/9/2006

Page 32

1  Q  Because your understanding was, before this litigation
2     started, before you retained counsel, your understanding
3     was the fishing history went with the boat and the state
4     limited entry crab permit was based on fishing history.
5     So isn't it logical that back then you would have
6     thought that you were actually entitled to Carl's state
7     limited entry crab permit?
8  A  Possibly.
9  Q  And I'll represent to you that the IFQ that he'd earned
10    on the NORTHWYN was worth $318,000, approximately. So
11    isn't it logical, then, before this litigation started,
12    before you referred to counsel, you believed that you
13    owned his IFQ as well?
14 A  Possibly.
15 Q  Okay. So for your 25,500 you got the fishing vessel.
16    By the way, how much is that vessel insured for now?
17 A  I'm not certain.
18 Q  How much is it worth?
19 A  It's hard to say.
20 Q  Is it insured for more than 200,000?
21 A  I think so.
22 Q  Is it insured for more than 300,000?
23 A  I don't think so.
24 Q  So, for the 25,500, you believe that you bought a
25    fishing vessel, about $600,000 of Glacier Bay

Van Pelt, Corbett, Bellows
206-682-9339

Exhibit B - 2

Anthony Moran, 3/9/2006

Page 38

```
 1              right?
 2    A         I can't be certain.
 3    Q         You were aware as of, oh, July 1999, there was going to
 4              be a compensation program for crabbers who crabbed in
 5              Glacier Bay, weren't you?
 6    A         I'm not certain of the dates.
 7                    MR. CAREW:  I had previously marked this
 8              Exhibit 11.  But since, through testimony, it
 9              appears I didn't need the other exhibits, would it
10              be all right if I re-mark this to Exhibit 3,
11              counsel?
12                    MR. REEVES:  I certainly don't object to that.
13                    MR. CAREW:  Okay.  Just trying to make sense.
14                    [Deposition Exhibit No. 3 marked.]
15    Q         (By Mr. Carew) Mr. Moran, I'm handing you a document
16              that's Exhibit 3.  I'll ask you to review that and then
17              tell me if you can identify Exhibit 3.  Take your time.
18              Have you had a chance to look at that?
19    A         Yes.  Okay.
20    Q         Can you identify Exhibit 11 -- sorry -- Exhibit 3?
21    A         Yes.
22    Q         Have you seen Exhibit 3 before?
23    A         I'm not certain.
24    Q         What is Exhibit 3?
25    A         I think that it is a document stating that Bruce
```

Anthony Moran, 3/9/2006

Page 39

| | | |
|---|---|---|
| 1 | | Weyhrauch is representing me. |
| 2 | Q | What's the date of that document? |
| 3 | A | July 1, 1999. |
| 4 | Q | And is it your recollection that you had, indeed, |
| 5 | | retained Bruce Weyhrauch at that time? |
| 6 | A | I guess that's correct. |
| 7 | Q | I mean, there's no reason to believe that he |
| 8 | | spontaneously sent this letter without having conferred |
| 9 | | with you? |
| 10 | A | Yes. |
| 11 | Q | So now, back in July of '99, wasn't it fair to assume |
| 12 | | that there was going to be some compensation based upon |
| 13 | | catch history? |
| 14 | A | I'm not certain. |
| 15 | Q | Well, you knew that there was going to be some |
| 16 | | compensation that was going to be distributed related to |
| 17 | | those permit holders or boats that fished in Glacier |
| 18 | | Bay, didn't you? |
| 19 | A | I think so. I assume so, yes. |
| 20 | Q | Wasn't it fair to assume that it was going to be based |
| 21 | | upon the catch history of boats that had already fished |
| 22 | | in Glacier Bay? |
| 23 | A | I assume so. |
| 24 | Q | And you were so acutely aware of this that you actually |
| 25 | | hired and paid an attorney to represent you, to make |

Anthony Moran, 3/9/2006

Page 40

```
 1       sure that you could get these compensation rights?
 2   A   That's correct.
 3   Q   You wanted, at that time you wanted to make sure you
 4       could maximize your recovery from the Glacier Bay
 5       Compensation Program, correct?
 6   A   I'm uncertain what transpired seven years ago, exactly.
 7       So when I say "I'm uncertain," I am uncertain.
 8   Q   But you don't know whether your motivation in going out
 9       and hiring that attorney to represent you trying to
10       collect Glacier Bay compensation, wasn't your motivation
11       to maximize what you could get from the Glacier Bay
12       compensation?
13              MR. REEVES:  Object to the form of the
14           question.
15   A   Could you ask me that again, please.
16   Q   (By Mr. Carew) Wasn't the reason that you hired an
17       attorney to represent you at this time, at this early
18       stage, to make sure that you could maximize the amount
19       you could recover from the Glacier Bay Compensation
20       Program?
21   A   Yes.
22              [Deposition Exhibit No. 4 marked.]
23   Q   (By Mr. Carew) I'm going to hand you what's been marked
24       Exhibit 4 and ask you to take your time and review
25       Exhibit 4.  And I'll ask you later, after you've
```

In this category, the total compensation of $4,539,919 was split between claims for the lost value of permits and lost revenue from fishing.

## Lost Revenue

| Name | Gross Pounds | % of total | Total Compensation |
|---|---:|---:|---:|
| Aase, Carl | 291,067 | 15.75% | $581,739.08 |
| Bean, Victor Sr. | 31,745 | 1.72% | $63,446.93 |
| Breseman, John | 27,913 | 1.51% | $55,788.13 |
| Christensen, Charles | 31,965 | 1.73% | $63,886.63 |
| Denkinger, Troy | 96,240 | 5.21% | $192,349.42 |
| Duncan, Dwight | 22,180 | 1.20% | $44,329.91 |
| Fuglvog, Edwin | 8,495 | 0.46% | $16,978.47 |
| Gregg, Randal | 11,591 | 0.63% | $23,166.27 |
| Gregg, Richard | 35,895 | 1.94% | $71,741.30 |
| Hakala, Ronald | 9,876 | 0.53% | $19,738.60 |
| Hinchman, John Sr. | 44,530 | 2.41% | $88,999.58 |
| Joyce, Bruce | 41,958 | 2.27% | $83,859.07 |
| Kalk, Donald | 11,376 | 0.62% | $22,736.56 |
| Karuza, John | 106,378 | 5.76% | $212,611.67 |
| Kerr, Carl | 39,676 | 2.15% | $79,298.17 |
| Larson, Terry | 13,002 | 0.70% | $25,986.36 |
| MacDonald, Terry | 148,674 | 8.05% | $297,146.28 |
| Martin, James (Al) | 2,560 | 0.14% | $5,116.53 |
| Morin, Allen | 98,096 | 5.31% | $196,058.90 |
| Nelson, Norval E. Jr. | 140,499 | 7.60% | $280,807.37 |
| Nelson, Norval H. Sr. | 22,937 | 1.24% | $45,842.88 |
| O'Neil, Dennis | 3,688 | 0.20% | $7,371.00 |
| Padon, Bradley | 56,190 | 3.04% | $112,303.76 |
| Painter, Larry | 20,515 | 1.11% | $41,002.16 |
| Place, John | 121,502 | 6.58% | $242,839.14 |
| Robinson, Calvin | 68,011 | 3.68% | $135,929.72 |
| Roddy, Peter | 90,851 | 4.92% | $181,578.73 |
| Rosvold, Eric | 146,164 | 7.91% | $292,129.68 |
| Samuelson, Gainhart | 13,558 | 0.73% | $27,097.60 |
| Severson, Mark | 15,779 | 0.85% | $31,536.59 |
| White, Vince | 72,584 | 3.93% | $145,069.52 |
| Wright, Frank Sr. | 2,218 | 0.12% | $4,432.99 |
| Total | 1,847,713 | 100.00% | $3,692,919.00 |

Compensation for lost revenue was distrib_____ ̄lder

Exhibit C

Anthony Moran * 10/28/2004
Moran v. Aase/Elam * J03-027 CV

Page 1

1       UNITED STATES DISTRICT COURT
2     FOR THE DISTRICT OF ALASKA AT JUNEAU
3
4
5
   ANTHONY and SUSAN MORAN,            )
6                                      )
                        Plaintiffs,    )
7                                      )
             vs.                       )
8                                      )
   CARL AASE and ANGELA ELAM,          )
9                                      )
                        Defendants.    )
10 _____)
11 Case No. J03-027 CV (RRB)
12
13
14
15
16     VIDEOTAPED DEPOSITION OF ANTHONY P. MORAN
17          Pages 1 through 138, Inclusive
18       Taken:  Thursday, October 28th, 2004
19             Place:  Juneau, Alaska
20
21
22
23
24
25

Glacier Stenographic Reporters Inc.
glaciersteno@gci.net * 907.789.9028

Exhibit D - 1

Anthony Moran * 10/28/2004
Moran v. Aase/Elam * J03-027 CV

Page 48

1   A.   I don't know.
2   Q.   Well --
3   A.   I assume.
4   Q.   Based on the agency telling you that there were dual applications?
6   A.   Yes.
7   Q.   Okay. You have no recollection -- specific recollection of the first conversation. What do you remember collectively of the three or four conversations you had with Carl Aase in December 1999?
11  A.   I remember that he wanted a large sum of money for sale of the LLP.
13  Q.   What sum did he want?
14  A.   I think he wanted $35,000.
15  Q.   And your reaction?
16  A.   Was I offered him $3,000.
17  Q.   Okay. Did he seem upset with your offer?
18  A.   No.
19  Q.   Did Carl at any time seem upset when -- in your conversations in December 1999, did he ever appear to you to have lost his temper or seemed upset?
22  A.   I don't know. We spoke on the telephone. We never spoke in person. So I couldn't tell you whether he was upset or not. It didn't appear on the telephone.

1    A.    No, I have no knowledge.

2    Q.    You've -- was part of your concern about the danger of Carl Aase -- did you try to put yourself in Carl Aase's shoes with respect to the transaction where you say you bought $3,000 -- for $3,000 you bought $600,000 of the Glacier Bay Compensation Program?

8    A.    No.

9    Q.    Now, let -- at the time of your conversations with Carl Aase in December of 1999, do you have a specific recollection that you did not talk about the Glacier Bay Compensation Program?

13    A.    We did not.

14    Q.    Okay. But you knew about the Glacier Bay Compensation Program at that time?

16    A.    There was some speculation about Glacier Bay, but there was -- I didn't know anything about it. There was talk -- talk that they were going to close commercial harvest in Glacier Bay, but I didn't know anything about it.

21    Q.    But you understood at that time that if there was going to be a settlement that Carl Aase would be one of the recipients?

24    A.    No, I did not.

25        MR. CAREW: Okay. Did you get my

# APPLICATION FOR COMPENSATION FROM THE NATIONAL PARK SERVICE UNDER THE GLACIER BAY COMMERCIAL FISHING COMPENSATION PROGRAM

1. Applicant's Name: Anthony P. Moran.

2. Mailing Address: Box 1191, Petersburg, Alaska 99833.

3. Physical Address: 604 Unimak, Petersburg, Alaska 99833.

4. Telephone Number: (907) 772-3745.

5. Category for which Compensation is being sought: Permit Holder.

6. Fisheries for which compensation is being sought: Tanner crab. A copy of my CFEC permit for red blue brown king pot is attached. I am a current owner of an Alaska limited entry permit.

7. I own a history of commercial fishing in Glacier Bay for the king and tanner crab fisheries that were made between 1989 and 1998.

8. The name of vessel that fished in Glacier Bay during the 1989 - 1998 period and which accumulated the fishing history for king and tanner crab was the F/V NORTHWYN. I now own that vessel and have renamed it the F/V TACOMA.

9. Documentation of the Glacier Bay king and tanner crab harvests in total pounds, and the value of the landings from Glacier Bay, for the above fishing vessel for 1989-98, which is taken from the CFEC landing reports is attached. I am also enclosing copies of logbooks

---

Application For Compensation From The National Park Service
Under The Glacier Bay Commercial Fishing Compensation Program        Page 1 of 2

Exhibit E - 1

030062

from the NORTHWYN that shows that the fishing activity for tanner crab in 1991 and 1992 was in Glacier Bay.

11. The annual Glacier Bay harvest in pounds for each year during the 1989-1998 period for the king and tanner crab fisheries on the Northwyn was as follows:

| Year | | | tanner crab (lbs.) | value ($) |
|---|---|---|---|---|
| 1991 | 0 | 0 | 59437 | 89156 |
| 1992 | 0 | 0 | 87595 | 191833 |
| 1993 | 0 | 0 | 53375 | 97249 |
| 1994 | 0 | 0 | 46940 | 109511 |
| 1995 | 0 | 0 | 30048 | 115084 |
| 1996 | 0 | 0 | 23010 | 48574 |
| 1997 | 5 | 16 | 22573 | 25146 |
| 1998 | 0 | 0 | 17610 | 35889 |

The annual average landing of tanner crab over this period was 42573 pounds and $89055.00.

I affirm that the statements made by me are the truth to the best of my knowledge.

Name: _Anthony P. Moran_
Anthony Moran

Dated: January 28, 2002

STATE OF ALASKA     )
                    )
FIRST JUDICIAL DISTRICT )

JAN 30 2002
Glacier Bay National Park
Juneau Field Office

WITNESS my hand and official seal the day and year in this certificate above written.

_Lawlee A. Weir_
Notary Public for Alaska
My Commission Expires: 12-04-02

[Notary Seal: LAWLEE A. WEIR NOTARY PUBLIC STATE OF ALASKA]

Application For Compensation From The National Park Service
Under The Glacier Bay Commercial Fishing Compensation Program    Page 2 of 2

Exhibit E - 2                                                       030063

LAW OFFICE OF
# BRUCE B. WEYHRAUCH, LLC
whyrock@ptialaska.net

114 S. FRANKLIN ST
SUITE 200
JUNEAU, ALASKA 99801
TELEPHONE: (907) 463-5566   FAX: (907) 463-5858

RECEIVED
MAY 29 2002
BY: KW

May 24, 2002

**Via Certified Mail**

Regional Director, Alaska Region
National Park Service
U.S. Department of the Interior
2525 Gambell Street
Anchorage, AK 99503

> Re:  Appeal of Anthony Moran as a Tanner and King Crab Permit Holder Under the Glacier Bay Commercial Fishing Compensation Program
> File: 203.253

Dear Regional Director:

Mr. Anthony Moran herein appeals the April 5, 2002 decision by Tomie Patrick Lee, Superintendent of Glacier Bay National Park, of his application for compensation under the Glacier Bay Commercial Fishing Compensation Program (Sept. 2001) ("Program").

Mr. Moran claimed compensation under the Tanner crab pot permit holder and the king crab pot permit holder categories of the Program. Copy enclosed. The April 5 decision denied him compensation for these fisheries because he did not provide documentation of Glacier Bay Tanner or king crab landings that he made himself. Copy enclosed.

Mr. Moran claims compensation under the Tanner crab pot permit holder category for 10 years, between 1989 and 1998 inclusive, for a total Glacier Bay

Exhibit F - 1

000157

Regional Director, Alaska Region
May 24, 2002
Page 2

Tanner crab harvest of 458,612 pounds. He claims compensation under the king crab permit holder category for two years, 1989 and 1997, for a total Glacier Bay king crab harvest of 2,214 pounds.

The April 5 decision denied him credit for any harvest of king or Tanner crab crab. As shown below, the April 5 decision is incorrect, and should be modified here on appeal.

## Explanation of Why the Decision Below Is in Error

Anthony Moran set out in his notarized affidavit accompanying his application for compensation under the Tanner and king crab permit holder categories under the Glacier Bay Compensation Program for Glacier Bay crab harvests during the 1989 to 1998 period.

The April 5 decision denied his compensation claim. The decision stated that he had "not provided documentation of Glacier Bay Tanner Crab landings." The decision went on to assert that while he provided landing data for the F/V NORTHWYN, which Mr. Moran owns, he did not make the landings. The April 5 decision asserted that "only" the permit holder of record for those landings was eligible for compensation. The Park Service indicated that the permit holder who made the landings and who it tentatively plans to provide compensation to for the king and Tanner crab landings, is Carl Aase. Mr. Aase is former owner of the F/V NORTHWYN. The Park Service asserted that the Compensation Program did not "have any provision to compensate applicants based on another individual's harvest history, only your own." April 5 letter of Decision.

Mr. Moran's affidavit explained the basis his compensation claim. He owns the history of commercial fishing in Glacier Bay for the king and tanner crab fisheries that were made between 1989 and 1998 on the NORTHWYN.

According to Mr. Moran, the name of fishing vessel that fished in Glacier Bay during the 1989 - 1998 period and which accumulated the fishing history for king and tanner crab was the F/V NORTHWYN. Mr. Aase was the former owner

2

Exhibit F - 2

030158

Regional Director, Alaska Region
May 24, 2002
Page 3

of the NORTHWYN, which was seized and sold by the U.S. Marshall at public auction. In 1999, Mr. Moran purchased the NORTHWYN, her engines, machinery, appurtenances, etc., at an U.S. Marshal sale.

After Mr. Moran purchased the NORTHWYN, he and Mr. Aase signed an Agreement, which was called "ADDENDUM." Under that Agreement, Mr. Aase sold all the fishing rights or fishing history of the F/V NORTHWYN to Mr. Moran. The fishing history in Glacier Bay was not excluded from that Agreement and belong to Mr. Moran.

The State of Alaska's Commercial Fishing Entry Commission recognized that the landing records and the past landing history of the NORTHWYN and its former owner Mr. Aase had been transferred by Mr. Aase to Mr. Moran and were now owned by Mr. Moran. The State of Alaska recognized that Mr. Aase has no privacy rights or interests in the fishing history and fishing records related to the F/V NORTHWYN. The State of Alaska further recognized that Mr. Moran proved that he is entitled to the records of the NORTHWYN because of the terms of the Agreement in which Mr. Moran purchased the fishing history of the NORTHWYN.

The State's CFEC would not have provided the landing records of the NORTHWYN to Mr. Moran if he was not the rightful owner of those records, and could not claim the records of the crab landings in Glacier Bay as his own.

Based on this background, Mr. Moran obtained and submitted with his compensation claim, documentation from the State's CFEC of the Glacier Bay king and tanner crab harvests in total pounds, and the value of the landings from Glacier Bay, for the NORTHWYN for 1989-98. Mr. Moran submitted the CFEC landing reports with his compensation application. He also enclosed copies of logbooks from the NORTHWYN showing that the fishing activity for tanner crab in 1991 and 1992 was in Glacier Bay.

Mr. Moran asks that the logbooks from the NORTHWYN, which he has and owns, be used to supplement his record on appeal. Copies of the NORTHWYN's

3

Exhibit F - 3

000159

Regional Director, Alaska Region
May 24, 2002
Page 4

vessel logs that indicate that the vessel made landings of Tanner crab in Glacier Bay from 1989 through 1992 are attached. Those additional landings should be allocated to Mr. Moran to increase his compensation under the Program, over that which the Park Service has designated to the past owner of the NORTHWYN.

Because Mr. Moran is the owner of the landing history of the NORTHWYN, he not Mr. Aase is entitled to compensation based on the landings of the NORTHWYN in Glacier Bay for king and Tanner crab.

### Request for Oral Hearing

Mr. Moran herein requests a hearing on this appeal.

### Conclusion

Anthony Moran herein has appealed the April 5, 2002, decision by Glacier Bay National Park Superintendent Tomie Patrick Lee, on his request for compensation under the Glacier Bay Compensation Plan Program based on his status as the owner of the landing history of king and Tanner crab landings in Glacier Bay by the NORTHWYN. Any landings and compensation that have been earmarked for the NORTHWYN, or Mr. Carl Aase as the former owner of the NORTHWYN, should be distributed to Mr. Moran, as the owner of both.

Very truly yours,

Bruce B. Weyhrauch

Enclosures

C:   Mr. Anthony Moran

4

Exhibit F - 4

030160