```
 1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF ALASKA
 2                     AT JUNEAU
 3  ─────────────────────────────────────────
                                    )
 4  ANTHONY MORAN,                  )
                                    )
 5          Plaintiff,              )
                                    )
 6      vs.                         )  No. J02-011 CV (JWS)
                                    )
 7  ANGELA AASE ELAM, in her        )
                                    )
 8  capacity as the administrator   )
                                    )
 9  of the estate of Carl Aase,     )
                                    )
10          Defendants.             )
   ─────────────────────────────────────────
11
           DEPOSITION UPON ORAL EXAMINATION
12
                          OF
13
                    ANTHONY MORAN
14  ─────────────────────────────────────────
15
                      9:15 a.m.
16
                    March 9, 2004
17
18                Scandia House Hotel
                  110 North Nordic Drive
19                Petersburg, Alaska 99833
20
21
                  JACQUELINE L. BELLOWS
22                     CCR 2297
23
24
25
```

Page 32

```
 1   Q   Because your understanding was, before this litigation
 2       started, before you retained counsel, your understanding
 3       was the fishing history went with the boat and the state
 4       limited entry crab permit was based on fishing history.
 5       So isn't it logical that back then you would have
 6       thought that you were actually entitled to Carl's state
 7       limited entry crab permit?
 8   A   Possibly.
 9   Q   And I'll represent to you that the IFQ that he'd earned
10       on the NORTHWYN was worth $318,000, approximately.  So
11       isn't it logical, then, before this litigation started,
12       before you referred to counsel, you believed that you
13       owned his IFQ as well?
14   A   Possibly.
15   Q   Okay.  So for your 25,500 you got the fishing vessel.
16       By the way, how much is that vessel insured for now?
17   A   I'm not certain.
18   Q   How much is it worth?
19   A   It's hard to say.
20   Q   Is it insured for more than 200,000?
21   A   I think so.
22   Q   Is it insured for more than 300,000?
23   A   I don't think so.
24   Q   So, for the 25,500, you believe that you bought a
25       fishing vessel, about $600,000 of Glacier Bay
```

```
 1            right?
 2     A      I can't be certain.
 3     Q      You were aware as of, oh, July 1999, there was going to
 4            be a compensation program for crabbers who crabbed in
 5            Glacier Bay, weren't you?
 6     A      I'm not certain of the dates.
 7                   MR. CAREW:  I had previously marked this
 8            Exhibit 11.  But since, through testimony, it
 9            appears I didn't need the other exhibits, would it
10            be all right if I re-mark this to Exhibit 3,
11            counsel?
12                   MR. REEVES:  I certainly don't object to that.
13                   MR. CAREW:  Okay.  Just trying to make sense.
14                   [Deposition Exhibit No. 3 marked.]
15     Q      (By Mr. Carew) Mr. Moran, I'm handing you a document
16            that's Exhibit 3.  I'll ask you to review that and then
17            tell me if you can identify Exhibit 3.  Take your time.
18            Have you had a chance to look at that?
19     A      Yes.  Okay.
20     Q      Can you identify Exhibit 11 -- sorry -- Exhibit 3?
21     A      Yes.
22     Q      Have you seen Exhibit 3 before?
23     A      I'm not certain.
24     Q      What is Exhibit 3?
25     A      I think that it is a document stating that Bruce
```

```
 1          Weyhrauch is representing me.
 2     Q    What's the date of that document?
 3     A    July 1, 1999.
 4     Q    And is it your recollection that you had, indeed,
 5          retained Bruce Weyhrauch at that time?
 6     A    I guess that's correct.
 7     Q    I mean, there's no reason to believe that he
 8          spontaneously sent this letter without having conferred
 9          with you?
10     A    Yes.
11     Q    So now, back in July of '99, wasn't it fair to assume
12          that there was going to be some compensation based upon
13          catch history?
14     A    I'm not certain.
15     Q    Well, you knew that there was going to be some
16          compensation that was going to be distributed related to
17          those permit holders or boats that fished in Glacier
18          Bay, didn't you?
19     A    I think so.  I assume so, yes.
20     Q    Wasn't it fair to assume that it was going to be based
21          upon the catch history of boats that had already fished
22          in Glacier Bay?
23     A    I assume so.
24     Q    And you were so acutely aware of this that you actually
25          hired and paid an attorney to represent you, to make
```

```
 1        sure that you could get these compensation rights?
 2   A    That's correct.
 3   Q    You wanted, at that time you wanted to make sure you
 4        could maximize your recovery from the Glacier Bay
 5        Compensation Program, correct?
 6   A    I'm uncertain what transpired seven years ago, exactly.
 7        So when I say "I'm uncertain," I am uncertain.
 8   Q    But you don't know whether your motivation in going out
 9        and hiring that attorney to represent you trying to
10        collect Glacier Bay compensation, wasn't your motivation
11        to maximize what you could get from the Glacier Bay
12        compensation?
13             MR. REEVES:  Object to the form of the
14        question.
15   A    Could you ask me that again, please.
16   Q    (By Mr. Carew) Wasn't the reason that you hired an
17        attorney to represent you at this time, at this early
18        stage, to make sure that you could maximize the amount
19        you could recover from the Glacier Bay Compensation
20        Program?
21   A    Yes.
22             [Deposition Exhibit No. 4 marked.]
23   Q    (By Mr. Carew) I'm going to hand you what's been marked
24        Exhibit 4 and ask you to take your time and review
25        Exhibit 4.  And I'll ask you later, after you've
```