Shane Carew, P.S.
Attorney for Defendant
5450 California Avenue S.W.
Suite 101
Seattle, WA 98136
Tel: 206.587.0590
Fax: 206.587.2388
shane@carewlaw.com

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA
## AT JUNEAU

| | |
|---|---|
| ANTHONY MORAN,               )<br>    Plaintiff,              )<br>                     )<br>   vs.                                )  CASE NO. J02-011 CV (JWS)<br>                     )<br>ESTATE OF CARL AASE,         )<br>                     )<br>    Defendant                )  | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S "APPURTENANCE OF VESSEL" THEORY

### RELIEF REQUESTED

Defendant seeks dismissal of plaintiff's claim that the GBCFCP compensation or rights were an "appurtenance" of the NORTHWYN at the time it was sold by the U.S. Marshal on May 5, 1999.

Plaintiff Moran has presented the Court with three theories why he is entitled to Carl Aase's $581,739.08 Permit Holder Compensation: 1) the agency erroneously denied Tony Moran's claim; 2) Tony Moran bought the

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 1**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

1  GBCFCP compensation from Carl with the ADDENDUM; and 3) Tony
2  Moran bought the GBCFCP rights because they were appurtenances to the
3  vessel at the Marshal's sale.
4      The first theory, that the agency was wrong to deny Tony Moran's
5  application, was addressed in defendant's Rule 12(6) motion for dismissal,
6  at Docket 60.  The second theory, i.e., that the compensation was
7  purchased with the ADDENDUM, is addressed defendant's motion at
8  docket 72.  This is the third and final leg of plaintiff's stool.

## QUESTION PRESENTED

10      Were compensation rights that derived from Carl Aase's use of his
11  personal state limited entry permit, which were part of the criteria for
12  GBCFCP compensation, an appurtenance of the vessel NORTHWYN
13  when it was sold at Marshal's sale?

## RELEVANT FACTS

**Plaintiff's Third Theory**

16      Although it was not clear in his complaint and first amended
17  complaint, Plaintiff Moran now asserts that he purchased Carl Aase's right
18  to the Glacier Bay Commercial Fisheries Compensation Program <u>when he
19  purchased the vessel NORTHWYN</u>:  "Moran sued Aase seeking to
20  establish his right to the compensation awarded to Aase, based upon his
21  purchase of the vessel and associated rights."  *Pltff's. Opp. To Mot. To
22  Dismiss*, Dkt. 67, pp. 2-3.

**Facts Re Sale of Vessel**

24      F/V Alaskan Sunset, Inc, owned the vessel NORTHWYN at the time
25  of the Marshal's sale. *Dec. of Carew*, Ex. G-1.  The NORTHWYN had

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - 2

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

1  been sold at Marshal's auction on May 5, 1999, when the mortgagee,
2  Northwest Farm Credit, foreclosed on it.
3  Plaintiff Moran was the high bidder for $25,500.00. Dkt 72, Ex. B- 3
4  The boat's insured value is between $200.000 and $300,000. Dkt. 72, Ex.
5  B- 3.  The very same day plaintiff Moran recorded title he was able to
6  mortgage it for $126,988.00.  *Dec. of Carew,* Ex. G-2.
7  At the time of the Marshal's auction, Mr. Aase did not own the
8  vessel; F/V Alaskan Sunset, Inc. owned the vessel. F/V Alaskan Sunset,
9  Inc. did not own the crab permit; Carl Aase owned the crab permit. The
10  National Park Service had approved payment of the individual Permit
11  Holder Compensation to Carl Aase, not to the vessel owner F/V Alaskan
12  Sunset, Inc.  Dkt. 28, Ex. 2.

**Comparison and Contrast of "Fishing Rights"**

14  It is important to briefly review and compare the "fishing rights"
15  known as the State Limited Entry Crab Permit, Individual Fishing Quota,
16  Glacier Bay Lifetime Access Permit, and the Northeast Multispecies <u>vessel</u>
17  permit at stake in *Gowen, Inc. v. F/V QUALITY ONE, et al.*, 244 F.3d 64,
18  67 (1st Cir. 2001), cert. denied, 534 U.S. 886 (2001). [1]

*1.  State Limited Entry Crab Permit*

20  Mr. Aase owned a "K69A" type of permit, a state limited entry permit
21  that permitted him to fish Tanner, red king crab and blue king crab in
22  Southeast Alaska, which included but was not limited to Glacier Bay.  Mr.

---

[1] Unlike the other four items analyzed, the compensation at issue here is not a "fishing right".

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - 3

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

Aase used his individual state limited entry crab permit to land crab during the qualifying years.

In 1973, the Alaska State Legislature enacted Alaska's Limited Entry Act (AS16.43) for commercial fisheries. The act established the Commercial Fisheries Entry Commission (CFEC), to administer a program to regulate entry into all commercial fisheries in state waters. State waters are those within three miles of Alaska's shores. The first limited entry programs implemented were salmon fisheries.

Under that Limited Entry Act, the CFEC issued regulations creating "a single, nonseverable, integrated fishery resource permit" to persons who qualified for a use privilege in Southeastern Alaska Tanner crab, red king crab, and blue king crab." 20 AAC 05.690.

After Carl Aase died, the permit had to be sold by his estate to another individual. 20 AAC 05.1750. It could not simply be used by a designee of the estate, under regulations. It does not attach to any vessel.

2.   *Individual Fishing Quotas ("IFQ's")*

Halibut and sablefish (black cod) are federally regulated fisheries, which may now only be fished by holders of Individual Fishing Quota ("IFQ's"). The history of the creation of this IFQ program is outlined on the NOAA website at http://www.fakr.noaa.gov/npfmc/sci_papers/ifqpaper.htm. The actual regulation implementing IFQ's is at 58 FR 59375 (11/9/93).

Halibut and sablefish IFQ's are federally-created rights to catch a certain percentage of the halibut and sablefish quota in a given year. These rights are registered in the name of an individual or company. The IFQ permit holder can fish his/her quota share from any U.S. documented

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - 4

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

boat of a certain size, so long as the vessel document has a fisheries endorsement.

*3.    The Right to Continue Fishing in Glacier Bay National Park was Completely Distinguishable from the Compensation Program; Lifetime Access Permit ("LAP"), a/k/a "Grandfather" Provision, Relates to an Individual, Not to a Vessel*

Seven months before the Compensation Program legislation was passed in May 1999, Congress passed other legislation that would allow qualifying individual Permit Holders lifetime access to fish in Glacier Bay.[2] Moran applied to the National Park Service for the Lifetime Access Permit and was turned down. *Dec. of Carew,* Exhibit H. Curiously, plaintiff Moran did not appeal the agency's denial of his claim for a Lifetime Access Permit to fish in Glacier Bay National Park.

"The law limited commercial fisheries within Glacier Bay proper to Tanner crab, halibut and salmon, and limited participation in these commercial fisheries to the lifetimes of individual fishermen with a qualifying history." *The Glacier Bay Commercial Fishing Issue (history)*, National Park Service website, www.nps.gov/glba/InDepth/learn/preserve/issues/fish/history.htm.

This "grandfather" provision applied to an individual such as Carl Aase, not to a vessel or vessels. The application deadline for Lifetime Access Permits was 15 months before the deadline for filing for

---

[2] Omnibus Consolidated and Emergency Supplemental Appropriation Act for FY 1999 (P. L. 105-277). Section 123(a)(2) (10/21/98).

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - 5

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

compensation. *Dec. of Carew*, Exhibit I-1. Tony Moran's application for a Lifetime Access Permit was denied for the same reason his application for compensation failed: he did not have a state limited entry crab permit at the time of application. *See, Dec. of Carew*, Exhibit H.

It is patently obvious a Lifetime Access Permit was not a privilege that went with the vessel; it was not a privilege capable of being transferred. This privilege was based upon the permit holder's <u>personal</u> fishing history utilizing his state crab permit. It expressly lasted only for the <u>permit</u> holder's lifetime. As with the rest of the rights and privileges, it had nothing to do with which vessel the permit holder was on when landing crab in the qualifying years. Mr. Moran has not alleged, however, that he somehow purchased any fishing rights, i.e., the right to a Lifetime Access Permit to fish tanner crab in Glacier Bay. Moran wants only the money.

4. *The Northeast Multispecies Vessel Permit in <u>Gowen</u> Is Completely Distinguishable from GBCFCP Compensation*

The fishing right in *Gowen, supra,* and the compensation Moran seeks in the instant case are completely different. In *Gowen,* the <u>vessel</u> was entitled to a "Northeast Multispecies" permit, referenced in that opinion as 50 CFR §648.4. That program very specifically states that the permit attaches to the vessel. 50 CFR §648.4 (a)(i)(A)[3] It may only be transferred from one vessel to another upon application to the agency. If the vessel is

---

[3] "To be eligible to apply for a limited access multispecies permit, as specified in §648.82, a vessel must have been issued a limited access multispecies permit for the preceding year, be replacing a vessel that was issued a limited access multispecies permit for the preceding year, or be replacing a vessel that was issued a confirmation of permit history."

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - 6

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

1 lost, there is a process for transferring the vessel's rights to another vessel
2 of comparable size and capabilities.

3 The very language of the Northeast Multispecies regulations
4 specifically states: "The fishing and permit history of a vessel is presumed
5 to transfer with the vessel whenever it is bought, sold, or otherwise
6 transferred…" 50 CFR 648.4 (a)(i)(D). There is no comparable provision
7 involved in this case.

8 The following summary of the Northeast Multispecies Permit
9 illustrates the difference between such a permit *vis a vis* an Alaska state
10 limited entry crab permit.

> The permit system at issue in *Gowen* and *The Miss Laura* bases the permits issued to a vessel each year upon the qualifying history of participation in the fishery by the vessel. An owner may arrange for the permits to be issued to replacement vessels that are not larger or of more horsepower than an allowed margin over the original vessel. The permit issued to a vessel may not be transferred, except that the vessel may be sold with the vessel's "fishing and permit history" and thus the right to a re-issuance of the permit, or the seller may retain "the vessel's fishing and permit history for purposes of replacing the vessel." If the seller retains this history, he is issued a "confirmation of permit history," which can be used to replace a vessel that has "sunk, been destroyed, or [been] transferred."

King, "Ships as Property: Maritime Transactions in State and Federal Law". 79 Tul. L. Rev. 1259, 1319 (footnotes omitted). For a similar description, see *PNC Bank, v. F/ V MISS LAURA*, 243 F. Supp. 2d 175, 176 (D.N.J. 2003), aff'd 381 F.3d 183 (3rd Cir. 2004), cert. denied, *Maine Shipyard & Marine Railway v. PNC Bank.,* 2005 U.S. LEXIS 661 (U.S., Jan. 18, 2005).

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 7**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

# LAW AND ARGUMENT

A. **The Right to Glacier Bay Commercial Fisherman Permit Holder Compensation is not a Fishing Right; Moran Does Not Seek Fishing Rights**

To begin with, this lawsuit is over money compensation, not a right to continue fishing. Plaintiff doesn't seek even the same species of relief that Gowen, Inc. sought. Moran does not allege that he bought at the Marshal's sale Carl Aase's right (or even the vessel's right) to continue fishing in Glacier Bay. Moran is not seeking fishing rights; he wants Carl's $581,739.08 Permit Holder Compensation.

B. **Federal Maritime Law Defines Appurtenances; As a Matter of Law, the Entitlement to the Compensation is Not an Appurtenance**

Whether the entitlement to the $581,739.08 was an appurtenance of the vessel is an issue of law. Maritime law defines what an appurtenance is, and what isn't.

*Gonzalez v. M/V DESTINY PANAMA.* 102 F. Supp. 2d 1352, 2001 AMC 133 (S.D.Fla. 2000) compiled much of the accumulated maritime law jurisprudence defining "appurtenance" and concluded:  "[A]n appurtenance is any specifically identifiable item that is destined for use aboard a specifically identifiable vessel and is essential to the vessel's navigation, operation, or mission." 102 F.Supp. 2d at 1356. *Gonzalez* was cited with approval in the *Gowen* decision.

The so-called fishing history "appurtenance" Moran claims to have purchased with the NORTHWYN was not "destined for use aboard a specifically identifiable vessel." The state crab permit was not owned by

**MORAN v. ESTATE OF AASE**  
**J02-011CV (JWS) - 8**

CAREW LAW OFFICE  
5450 California Avenue SW, Suite 101  
Seattle, Washington  98136  
Telephone: (206) 587-0590  
Fax: (206) 587-2388

the vessel owner F/V Alaskan Sunset, Inc. The use of the "fishing history" was not "destined" for use on the NORTHWYN.  The use of the "fishing history" was only for purposes of an individual permit holder getting paid compensation in a government program.

Carl's GBCFCP compensation is simply not an appurtenance of the vessel.  An appurtenance is defined as "an item that is essential to the [ship's] navigation, operation, or mission".  *Gowen,supra,*  244 F.3d  at  67.  The compensation *per se* of $581,739.08 is not an appurtenance of the vessel, because it does not fit the definition.

The Glacier Bay fishing history was not essential to the NORTHWYN's navigation, operation, or mission.  Whether or not the NORTHWYN itself had landed crab in Glacier Bay did not give the NORTHWYN any greater rights. Thus, even if "fishing history" could be transferred or sold, the Glacier Bay "fishing history" was not part of the vessel's appurtenances. Glacier Bay "fishing history" was therefore **not** sold, as a matter of law, at the Marshal's sale.

C. **The GBCFCP Had Neither Been Funded, Nor Even Created, At the Time of the Sale; Property that Does Not Exist Cannot be Sold**

The $581,739.08, and the right to it, did not even exist at the time of the Marshal's sale. The Marshal's sale happened on May 5, 1999. The creation of the Compensation Program and the funding itself did not exist until May 21, 1999.  Public hearings still had to be held; the regulations had to be drafted for public comment, and final regulations published.  The fund

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - **9**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

wasn't paid out for another four years. For something to be "appurtenant" to a vessel at the time of a Marshal's sale, it must be in existence at the time of the sale. To be sold with the vessel, the right to the compensation would have to be "property" at the time of the sale. As a matter of law in the Ninth Circuit, this "nebulous possibility" of compensation is not property. *Sliney v Battley*, 270 F.3d 1254 (9th Cir. 2001).

In *Sliney*, the petitioner, a halibut and blackcod fisherman, had filed bankruptcy. Nineteen months later, the Secretary of Commerce published final regulations implementing the halibut and sablefish IFQ program. *Id.*, at 1255. The Ninth Circuit held that the possibility of future IFQ's (which assumed the right legislation and regulations <u>might</u> be implemented in the future), was not a property right at the time petitioner filed bankruptcy.

Likewise, the $581,739.08 did not exist, it was not "property", at the time the vessel was sold. It could not be an "appurtenance" to the vessel if it didn't even exist at the time.

The *Sliney* case is not an anomaly. A case closer on the facts was more recently decided, involving compensation to farmers. In the same year the GBCFCP was created and funded, certain qualifying farmers benefited from a very similar compensation program. In the Appropriations Act bill of October 22, 1999, Congress funded two farm loss compensation programs, the Market Loss Assistance Program ("MLAP"), and the Crop Disaster Program ("CDP"). *In re Vote,* 276 F.3d 1024, 1025-26 (8th Cir. 2002).

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - **10**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

Farmer Drew Vote filed a Chapter 7 bankruptcy petition on September 7, 1999. Under the MLAP and CDP programs, Mr. Vote received payments for pre-petition crop losses after the bankruptcy filing. The Chapter 7 bankruptcy trustee sought to include those subsequent payments as part of the estate. The 8th Circuit ruled it was not a "legal or equitable interest in property" at that point, because the legislation was passed <u>after</u> the bankruptcy date. *Id.,* at 1026-27.

Drew Vote's right to compensation was based upon a "history" of his farming. Similarly, Carl Aase's right to compensation was (at least partially) based on his personal "history" of fishing. The "history" of farming didn't transfer to the Chapter 7 trustee, even if the means of farming (i.e., land and equipment) did transfer; likewise, Carl's "history" of fishing did not transfer with the Marshal's sale of the vessel. This compensation belongs to Carl Aase alone.

Plaintiff apparently asserts he bought with the vessel a historical fact as an appurtenance of the vessel. The historical fact is the number of pounds of tanner crab Carl Aase landed from Glacier Bay using his individual limited entry crab permit.

Northwest Farm Credit had a security interest in the vessel that was foreclosed upon. An historical fact does not become part of a security interest. One commentator put it best, when analyzing the issue:

> One cannot grant a security interest in the fact that one engaged in commercial fishing in a particular fishery over a particular three-or five-

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 11**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

year period, just as one cannot grant a security interest in the fact that one had an enjoyable vacation fly fishing in Montana last summer.

King, "Ships as Property: Maritime Transactions in State and Federal Law".

79 Tul. L. Rev. 1259, 1320-21.

**D.    The Glacier Bay Compensation Is Entirely Based On A Permit Holder's Production, Not A Vessel's Production; Vessel "History" Is Irrelevant**

1.   *Only an Individual Permit Holder's "History" is Relevant to Compensation Claim, Not a Vessel's "History"*

The actual plan explains how the compensation is calculated in Part III: "Mechanics of the Compensation Plan: Individual Permit Holder Compensation".

> To illustrate the compensation plan mechanics, suppose a hypothetical Halibut fisherman, John W., has harvested 22,250 pounds of halibut during the ten-year period over which halibut harvests are calculated (1989-1998). This harvest represents 0.84 percent of the total harvest of Halibut from Glacier Bay during that ten-year period by those applying for and receiving compensation. John W., with 0.74 percent of the harvest between 1989 and 1998 is entitled to 0.74 percent of $1.196 million, or $8,850.00. All compensation amounts will be calculated as a percentage of the total catch, as reported by applicants.

<u>Compensation Plan: Glacier Bay Commercial Fisheries Compensation Program</u> (September 2001)(p. 10) Dkt. 67. Thus, the way the compensation amount is calculated has absolutely <u>nothing</u> to do with ownership of the vessel the qualifying pounds were caught on. A search of the entire plan reveals that <u>nowhere</u> in the plan is mentioned, *per se*, "vessel owner" or "vessel owners".

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 12**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

Payments by the National Park Service were <u>only</u> made to permit holders. Any payment made to a vessel owner was not *qua* vessel owner, but only if the permit holder and the vessel owner was one and the same.

2.   *Plaintiff has Conceded GBCFCP Lost Permit Value Compensation Goes to the Individual Permit Holder Carl Aase; There is No Rationale to Suggest the Individual Permit Holder Compensation Should be Handled Differently*

Plaintiff Moran stipulated that Mr. Aase should receive the $11,793.89 for the "Tanner Pot, Lost Permit Value", which the National Park Service awarded to Mr. Aase. Dkt. 38.  Mr. Aase was entitled to that compensation based upon personally having had a history of fishing in Glacier Bay, and based upon his current ownership of a state limited entry tanner pot permit. *See*, Dkt. 67, Compensation Plan at p. 17.  There is no logical distinction between Mr. Aase's entitlement to Lost Permit Value compensation and Carl's entitlement to Individual Permit Holder compensation.

**E.   What Was Relevant To The GBCFCP Was What Carl Landed Using His Individual Permit. Vessel History Is Irrelevant.**

The value of the NORTHWYN was completely separate from Carl Aase's individual state limited entry crab permit.  The NORTHWYN could fish crab, but only if an individual with his/her own crab permit was aboard.

In *Gowen*, the <u>vessel's</u> permits "contributed substantially to the vessel's value." *Gowen, supra,* 244 F.3d at 68.  It could continue to operate in the fisheries it had operated in before.

Carl's personal crab permit didn't contribute to the value of the NORTHWYN.  Long after the Marshal's sale Carl Aase continued to own

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - **13**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

the crab permit, and continued to utilize it to generate revenue for himself. Tony Moran was unable to fish crab with the NORTHWYN because he didn't own a crab permit. Carl's crab permit did not allow the NORTHWYN itself to fish for a species, unlike the *Gowen* case.

**F.    As a Matter of Law, Qualification for Individual Permit Holder Compensation Had Nothing to Do with the Vessel Carl Aase Used; The GBCFCP Compensation Did not Attach to the Vessel**

The eligibility criteria for Individual Permit Holder compensation were: a) current ownership of an Alaska limited entry permit; b) a history of commercial fishing in Glacier Bay proper … during the qualifying eligibility period (1989-1998)." <u>Compensation Plan: Glacier Bay Commercial Fisheries Compensation Program</u> (September 2001)(p. 17).Dkt 67 Qualifying in the first instance as an Individual Permit Holder had only to do with the ownership of a crab limited entry permit, and actually having fished in Glacier Bay.

Theoretically, Carl Aase could have chartered and used a different boat for each time he landed crab during the qualifying years: it would have made absolutely <u>no</u> difference to his qualifying for Individual Permit Holder compensation. It would be ludicrous to assert that each boat that Carl Aase chartered to land crab had a GBCFCP Individual Permit Holder Claim.

**G.    The <u>Gowen</u> Case Addressed Fishing Regulations Specific to Northeast U.S.; <u>Gowen</u> Must Not be Evaluated Out of Context**

The *Gowen* case does not stand for the proposition that all fishing rights belong to <u>some</u> vessel. The statutes and regulations for the

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - **14**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

Northeast Multispecies Permit expressly limit the use of the permit to a particular vessel. 50 CFR §648.4 (a)(i)(A)  By express regulation, the permit is presumed to transfer with the vessel unless there is writing to the contrary. 50 CFR §648.4 (a)(i)(D)

The fishing rights of Carl Aase expressly belong to an individual, including IFQ and Alaska state limited entry crab permits.  They don't automatically transfer title when a vessel is sold.  They can, and are, sold independently of a vessel.  They are not by default included in a Marshal's sale as an "appurtenance" of the vessel.

The court must limit *Gowen* to its specific facts. Carl Aase's history of fishing in Glacier Bay did not transfer, as a matter of law, as an appurtenance to the NORTHWYN.

## CONCLUSION

In answer to the Question Presented, compensation rights that derived from Carl's use of his state limited entry crab permit were not an appurtenance to the vessel.  Each of the following points eliminates plaintiff's contention that the compensation was an appurtenance.

1. The vessel belonged to a corporation. The crab permit belonged to Carl Aase personally. Any rights arising from Carl's permit belonged to Carl, not the vessel or the corporation.

2. The historical fact of Carl Aase's catching crab in the waters of Glacier Bay was not "destined for use aboard a specifically identifiable vessel" and therefore not an appurtenance to the NORTHWYN.

3. Carl Aase's historical catches were not essential to the NORTHWYN'S navigation, operation, or mission, and therefore not an appurtenance.

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 15**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

4. Carl Aase's personal crab permit did not contribute to the value of the NORTHWYN.

5. Qualification for Individual Permit Holder compensation had nothing to do with which vessel the permit holder historically used.

6. The Northeast Multispecies <u>Vessel</u> Permit that was the subject of the *Gowen* case was unique to that case. By regulation, the Northeast Multispecies Vessel Permit transferred with the vessel.

7. At issue here is a right to money compensation, not a fishing right for a vessel as in *Gowen*. Moran specifically did not seek rights to fish in Glacier Bay in this action.

Judgment should be entered for defendant, and costs awarded to defendant accordingly.

Dated this 31st day of March, 2006, at Seattle, Washington.

/s/ *Shane C. Carew*
Shane C. Carew
Alaska Bar No. 9407067
Counsel for Defendant
5450 California Ave. SW, #101
Seattle, WA 98136
Phone: (206) 587-0590
Fax: (206) 587-2388
shane@carewlaw.com

**CERTIFICATE OF SERVICE**

This certifies that on the 31st day of March, 2006, a true and correct copy of the document was served on:

James Reeves
Dorsey & Whitney LLP
1031 W Fourth Ave., Suite 600
Anchorage, AK 99501
by electronic means through the ECF system as indicated on the Notice of Electronic Filing, or if not confirmed by ECF, by first class, regular mail.

/s/ Shane Carew
Shane C. Carew, ABA #9407067
Shane Carew, PS

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - **16**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388