Shane Carew, P.S.
Attorney for Defendant
5450 California Avenue S.W.
Suite 101
Seattle, WA 98136
Tel: 206.587.0590
Fax: 206.587.2388
shane@carewlaw.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA
# AT JUNEAU

| | |
|---|---|
| ANTHONY MORAN, | ) |
|     Plaintiff, | ) |
|     vs. | ) CASE NO. J02-011 CV (JWS) |
| ESTATE OF CARL AASE, | ) |
|     Defendant | ) |

## DEFENDANT'S CONSOLIDATED REPLY MEMORANDUM RE MOTIONS FOR SUMMARY JUDGMENT

### RESPECTIVE POSITIONS OF PARTIES

The Estate of Carl Aase is not "miscast[ing] the plaintiff's current legal position." The Estate is actually shining a bright light on it, and asking the Court for a ruling. There are no genuine issues of material fact.

Plaintiff Moran initially presented the Court with three theories why he is entitled to Carl Aase's $581,739.08 Permit Holder Compensation: 1) the agency erroneously denied Tony Moran's claim; 2) Tony Moran bought

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - 1

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington 98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

1  the GBCFCP compensation from Carl with the ADDENDUM; and 3) Tony
2  Moran bought the GBCFCP rights because they were appurtenances to
3  the vessel at the Marshal's sale.
4      Plaintiff's proposed Second Amended Complaint makes no mention
5  whatsoever of the discredited first theory, but does re-incorporate the
6  second and third theories.
7      Plaintiff now focuses on a proposed fourth theory brought up in the
8  pending motion to amend the complaint: that the agency didn't follow the
9  GBCFCP when it granted the compensation to Carl Aase and not to Tony
10 Moran, so Carl Aase was "unjustly enriched".   Think of it as a "squishy"
11 restatement of Plaintiff's first theory, i.e.,  the agency was wrong based on
12 equity not law, when it denied Moran the Permit Holder Compensation.

### REPLY TO FIRST THEORY: AGENCY WAS WRONG DENYING MORAN'S CLAIM

15     Plaintiff concedes now that the National Park Service was not in
16 error when it denied Tony Moran's claim.  That theory is addressed in
17 Defendant's Rule 12(b)(6) motion. Dkt. 60.   That theory was obviously
18 wrong, but clearly intended to get the quickest result in the hopes of getting
19 a default judgment.  If the Court were convinced by Plaintiff's
20 representation that Mr. Moran was directly entitled to the award from the
21 agency, *Complaint* (Dkt. 1, Par. 11) and *Amended Complaint* (Dkt. 10, Par.
22 12),   the Court would be less reticent to enter a default judgment.
23     Plaintiff has made a U-turn.  Clearly stated at page 5 of his
24 opposition, Mr. Moran <u>now</u> says this case is "<u>not</u> based on a claim that any
25 decision by the NPS was illegal."  (emphasis added)

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - 2

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

**REPLY TO SECOND THEORY: "ADDENDUM" THEORY**

Plaintiff now says: *"[This case] does not stand or fall upon the …precise interpretation of the Addendum."* Pltff's Opp., p. 5.

Well, does it or doesn't it? Plaintiff can't have it both ways.

Plaintiff alleges the Addendum transferred the fishing permits and history "regardless of whether they had previously passed [at the] Marshal's sale." *Proposed Second Amended Complaint*, Dkt. 71, par. 8. *See also Complaint* (Dkt 1, Par.7) and *First Amended Complaint* (Dkt. 10, par. 8) (Carl Aase "agreed to sell the plaintiff all the fishing rights or fishing history of the F/V NORTHWYN **in the ADDENDUM agreement**...".)

After considering Mr. Moran's deposition testimony, it is no wonder that Plaintiff does not want a ruling on "the precise interpretation of the Addendum." The Addendum makes no mention of the Glacier Bay compensation, and mentions only groundfish rights. And Moran, despite knowing there was Glacier Bay compensation coming, didn't utter a word about it at the time.

Plaintiff has not specifically identified any "genuine issue of material fact" that would bar a decision on the "Addendum" theory. In his opposition, Plaintiff does not dispute or contravene any material facts. He does not attempt to recant his sworn testimony.

The Estate does take issue with Plaintiff's description of Ms. Olivia Olsen as the "drafter" of the Addendum. *See, Pltff's Opp to Defendant's Motion for Summary Judgment…("Pltff's Opp."),* p. 4. Mr. Moran had come into Ms. Olsen's office, and dictated to her what he wanted the document to say. *See,* Dkt. 31, *Dec. of Olson,* par. 4.

MORAN v. ESTATE OF AASE  
J02-011CV (JWS) - 3

CAREW LAW OFFICE  
5450 California Avenue SW, Suite 101  
Seattle, Washington 98136  
Telephone: (206) 587-0590  
Fax: (206) 587-2388

In any event, there is no "current dispute" about the meaning of the final sentence of the text of the ADDENDUM. *See, Pltff's Opp.,* p. 4. Both plaintiff and the Court have acknowledged that the ADDENDUM specifically <u>excluded</u> Mr. Aase's state limited entry permits and IFQ's. Plaintiff Moran has not urged a different meaning in his response. So this is not a genuine issue of material fact.

The court has the testimony of the parties before it, and it has the Addendum. The Addendum is a contract, and its interpretation is an issue of law. A decision on this legal issue is ripe for determination.

**REPLY TO THIRD THEORY: "APPURTENANCE" THEORY**

Plaintiff doesn't seem any more comfortable with the "appurtenance" theory than he is with the "addendum" theory: **"[This case] does not stand or fall upon the definition of the word "appurtenance"…"** *Pltff's Opp.,* p. 5.

Plaintiff's third theory, the "appurtenance" theory, wasn't clearly set out in plaintiff's complaint or amended complaint, but is certainly clarified in his proposed second amended complaint (Dkt. 71) at paragraph 7, stating that "by law", "all fishing permits used in the operation and all fishing history of the vessel" were included in the sale of the vessel. They were "necessaries appertaining and belonging to the vessel." *Id. See also, Pltff's. Opp. To Mot. To Dismiss*, Dkt. 67, pp. 2-3. ("Moran sued Aase seeking to establish his right to the compensation awarded to Aase, based upon his purchase of the vessel and associated rights.")

Plaintiff's opposition to the summary judgment motion did not dispute the following facts:

**MORAN v. ESTATE OF AASE**  
**J02-011CV (JWS) - 4**

CAREW LAW OFFICE  
5450 California Avenue SW, Suite 101  
Seattle, Washington 98136  
Telephone: (206) 587-0590  
Fax: (206) 587-2388

1. *1.*  The vessel belonged to a corporation. The crab permit belonged to Carl Aase personally. Any rights arising from Carl's permit belonged to Carl, not the vessel or the corporation.

2. *2.*  Qualification for Individual Permit Holder compensation had nothing to do with which vessel the permit holder historically used.

3. *3.*  At issue here is a right to money compensation, not a fishing right for a vessel as in *Gowen*.  Moran specifically did not seek rights to fish in Glacier Bay in this action.

Plaintiff has not specifically identified any "genuine issue of material fact" that would bar a decision on his theory that he bought Carl Aase's right to individual Permit Holder Compensation because it was an appurtenance of the vessel.

In arguing the legal issue, Plaintiff makes no attempt at analysis of the *Gowen* case, no attempt to distinguish the other cases cited, and no attempt to analyze what an "appurtenance" is under general maritime law.

Whether Carl's Permit Holder Compensation award was an appurtenance of the vessel is an issue of law.  No more facts need to be developed.  This issue is ripe for decision.

**REPLY TO FOURTH THEORY: UNJUST ENRICHMENT**

Unjust enrichment is not yet at issue. It is only pending in the motion to amend. Plaintiff seeks to divert the Court's attention from the specific motions by arguing unjust enrichment. Ignoring the argument would imply the new theory has merit.  It doesn't.

*First Theory, Part II:  The Agency was Wrong*

The unjust enrichment claim brings us full circle to plaintiff's first theory, that the National Park Service was wrong to award Carl Aase and

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - 5

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

1  not Tony Moran the Permit Holder Compensation.   Plaintiff argues that

2  even though Tony didn't qualify for Permit Holder Compensation, it was

3  "unjust" or inequitable that Tony didn't get Carl's award.  Plaintiff takes the

4  theory a step further, arguing it was unjust that the agency followed the law

5  and awarded Carl Aase his due.

6       Plaintiff  asserts he is entitled to Carl Aase's $581,789.08 Permit

7  Holder Compensation because he, Moran, is an "active" fisherman. If

8  Moran has a beef with the National Park Service about how it determined

9  who to compensate, he should have sued the NPS.  If Moran felt he

10  qualified under the plan, he should have sued the NPS. Carl Aase had no

11  control over the NPS implementing its Plan.

12       Plaintiff alleges he was "deprived" of the Permit holder

13  Compensation in violation of the "stated purpose of Compensation Plan".

14  See *Proposed Second Amended Complaint*, Dkt. 71 Par. 10. If Plaintiff

15  feels aggrieved by the regulations and Plan, his remedy was to sue the

16  National Park Service, not Carl Aase.

17       *Need "Clean Hands" to Grab Some Equity*

18       Does Tony Moran have "clean hands" when requesting equity?

19  Absolutely not.  When Tony Moran applied for Permit holder

20  Compensation, he was trying to sneak a fast ball past the National Park

21  Service.  He submitted an application with a notarized statement asserting

22  that his crab permit was attached.  He knew that was a requirement.  But

23  he didn't own a crab permit.  Obviously, Mr. Moran was hoping that the

24  agency was not going to check out whether, in fact, he had a crab permit.

25

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 6**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

Obviously, Tony Moran was hoping to get Carl's <u>entire</u> Permit Holder compensation, even though Tony knew he did not qualify.

The boldness of the move is chilling.  The National Park Service had already denied Tony Moran a Glacier Bay Lifetime Access Permit because he didn't own a permit.  Undaunted, he filed an application asserting he <u>did</u> own a limited entry permit when seeking the GBCFCP tanner crab Permit Holder compensation.

*What is the Balance of Equities?*

Simply for the sake of argument, let's look at the equities based on the record.  Moran's self-description as an "active" fisherman is clearly wrong. Moran has never been a tanner crab permit holder: he can't describe himself as "active" in that fishery.  In the seven years since he bought the NORTHWYN, he hasn't bought a crab permit. He is not being deprived of a "future" in the crab fishery when he has not purchased a permit; not owning a permit is the only fact which denies him a "future" in tanner crab.

Let's look at the equities on Carl's side.  He was a pioneer in tanner crabbing in the Glacier Bay National Park:  He landed far more than <u>anyone</u> else during the qualifying years.

Carl Aase actually owned a tanner crab permit. He owned a crab boat during all the relevant years. He actually fished as the skipper and owner of that boat, figuring out where the crab was, figuring out where to land them. Carl paid money to local vendors to operate and maintain the NORTHWYN all those years. He paid for moorage, he provided jobs to Alaskans. He provided a means of support for the family of his crew. He

MORAN v. ESTATE OF AASE
J02-011CV (JWS) - **7**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

paid taxes on the crab he landed. He took the all economic risks associated with being an entrepreneur. Crab he caught were processed by Alaskans, thankful for the work. And he met all the specific criteria required by the NPS.

Moran asks this Court for the "equitable" relief of taking Carl Aase's award away from him because he was "retired". First, Plaintiff has no standing to ask the agency or the Court to reverse the agency's decision *vis a vis* Carl Aase.   Second, even though Carl may not have been able to handle the physical aspects,  he could still use his permit as a "walk-on" permit holder and pay others to do the work.  The GBCFCP did not mandate that a permit holder had to be young or in good health.  Carl qualified under the specific GBCFCP requirements.  And Moran concedes the NPS didn't do anything "illegal" in its award.

"Equity" is not an issue. This is an action at law. Even if equity was an issue, Carl Aase was absolutely entitled to the $581,789.08, not Tony Moran.

## CONCLUSION

Because the motions are interrelated, defendant will consolidate the reasons why the case should be dismissed.

<u>*Plaintiff "currently" does not claim the NPS was wrong to deny Tony Moran Permit Holder Compensation.*</u>.  Plaintiff Moran's sole remedy from the denial of the award for Individual Permit Holder compensation was to appeal from the agency's decision.  He failed to do so, and therefore waived that right to appeal.

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 8**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

1  The Agency decision was correct: Moran did not qualify because he did not own a crab permit at the time of application.

Plaintiff Moran does not have standing to obtain an order from this Court to block the agency award to Carl Aase.

*<u>This case **does** stand or fall based on the precise interpretation of the Addendum.</u>*  It is an issue of law.  Plaintiff Moran did not purchase any "fishing history" which would qualify one for Glacier Bay tanner crab individual Permit Holder Compensation when the ADDENDUM was executed on December 17, 1999.

The ADDENDUM references the LLP rights only and <u>specifically</u> excludes Carl Aase's state limited entry crab permit and his IFQ. There wasn't any written or verbal manifestation of an understanding the ADDENDUM transferred any rights related to the GBCFCP compensation.

If Tony Moran intended to buy Carl Aase's Glacier Bay "fishing history" or his GBCFCP compensation, and still did not include it in the written ADDENDUM, it was waived.  Plaintiff Moran knew it existed, and he didn't include it in the contract. He expressly (in writing and verbally) identified only the "moratorium" and LLP rights related to groundfish.

*<u>This case **does** stand or fall upon the definition of "appurtenance."</u>*
Tony Moran did not purchase any "fishing history"  which would qualify one for Glacier Bay tanner crab individual Permit Holder Compensation when he bought the NORTHWYN at the Marshal's sale.

Compensation rights that derived from Carl's use of his state limited entry crab permit were not an appurtenance to the vessel because:

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 9**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388

1.  The vessel belonged to a corporation. The crab permit belonged to Carl Aase personally. Any rights arising from Carl's permit belonged to Carl, not the vessel or the corporation.

2.  The historical fact of Carl Aase's catching crab in the waters of Glacier Bay was not "destined for use aboard a specifically identifiable vessel" and therefore not an appurtenance to the NORTHWYN.

3.  Carl Aase's historical catches were not essential to the NORTHWYN'S navigation, operation, or mission, and therefore not an appurtenance.

4.  Carl Aase's personal crab permit did not contribute to the value of the NORTHWYN.

5.  Qualification for Individual Permit Holder compensation had nothing to do with which vessel the permit holder historically used.

6.  The Northeast Multispecies <u>Vessel</u> Permit that was the subject of the *Gowen* case was unique to that case. By regulation, the Northeast Multispecies Vessel Permit transferred with the vessel.

7.  At issue here is a right to money compensation, not a fishing right for a vessel as in *Gowen*. Moran specifically did not seek rights to fish in Glacier Bay in this action.

Plaintiff is not entitled to an equitable remedy. This is an action at law. Tony Moran has adequate remedies at law. If he doesn't qualify at law, equity cannot contradict and supersede the law. Plaintiff should have sought his remedies against the National Park Service. The only inequity in this case was Tony Moran's suing Carl, and depriving Carl Aase of his property.

MORAN v. ESTATE OF AASE  
J02-011CV (JWS) - **10**

CAREW LAW OFFICE  
5450 California Avenue SW, Suite 101  
Seattle, Washington 98136  
Telephone: (206) 587-0590  
Fax: (206) 587-2388

Judgment should be entered for defendant, and costs awarded to defendant accordingly.

Dated this 18th day of April, 2006, at Seattle, Washington.

/s/ *Shane C. Carew*
Shane C. Carew
Alaska Bar No. 9407067
Counsel for Defendant
5450 California Ave. SW, #101
Seattle, WA  98136
Phone: (206) 587-0590
Fax: (206) 587-2388
shane@carewlaw.com

**CERTIFICATE OF SERVICE**

This certifies that on the 18th day of April, 2006, a true and correct copy of the document was served on:

James Reeves
Dorsey & Whitney LLP
1031 W Fourth Ave., Suite 600
Anchorage, AK  99501
by electronic means through the ECF system as indicated on the Notice of Electronic Filing, or if not confirmed by ECF, by first class, regular mail.

/s/ Shane Carew
Shane C. Carew, ABA #9407067
Shane Carew, PS

**MORAN v. ESTATE OF AASE**
**J02-011CV (JWS) - 11**

CAREW LAW OFFICE
5450 California Avenue SW, Suite 101
Seattle, Washington  98136
Telephone: (206) 587-0590
Fax: (206) 587-2388