Bruce B. Weyhrauch
Law Office of Bruce B. Weyhrauch, LLC
114 South Franklin St. Suite 200
Juneau, Alaska 99801
Phone: (907) 463-5566
Fax: (907) 463-5858
E-mail: whyrock@gci.net

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Anthony Moran, | ) |
|       Plaintiff, | ) |
| vs. | ) Case No. J-02-011 CV (JWS) |
| Carl Aase, | ) |
|       Defendant. | ) |

## **OPPOSITION TO MOTION FOR RULE 11 SANCTIONS**

The defendant has moved for sanctions under Federal Rule of Civil Procedure 11 against plaintiff's prior attorney, Law Office of Bruce Weyhrauch, LLC ("Law Office"), which opposes that motion.

Rule 11 in essence requires honesty in, and accountability for, claims and allegations presented to a court. The question here is whether Law Office violated this mandate in drafting a paragraph that describes part of this litigation's background. The paragraph in question is found in plaintiff's original and first amended complaints. In brief, the paragraph does not constitute a violation of Rule 11. Rather, it was both warranted and supported, and (in any event) it does not relate to any key underpinning of

---

plaintiff's legal claims in this case, nor was it pivotal (or even relevant) to the default judgment entered against defendant. This opposition 1) discusses Federal Rule of Civil Procedure 11, 2) sets out the relevant background facts, and 3) explains why the sanctions motion is not well taken and borders on the frivolous.

## Federal Rule of Civil Procedure 11

Civil Rule 11, in part, provides that "by presenting to the court … a pleading … an attorney … is certifying … to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that

> the claims … and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and that] the allegations … have evidentiary support ….[1]

The rule further provides that if "the court determines that" the quoted requirement has been violated, it "may … impose an appropriate sanction upon the attorneys … that … are responsible for the violation."[2]

Even if a court finds a violation occurred, sanctions are discretionary rather than mandatory.[3] When, as here, a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is

---

[1] Federal Rule of Civil Procedure 11(b).
[2] Federal Rule of Civil Procedure 11(c).
[3] Moser v. Bret Harte U. High School Dist., 366 F. Supp. 2d 944, 950 n.2 (E.D. Cal. 2005). See Stewart v. American Intern. Oil & Gas Co., 845 F.2d 196, 201 (9th Cir. 1988) ("sanctions should not be used to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.") (internal quotation marks omitted). The purpose of sanctions is not punishment, but rather "to get the attention of" the violator, "and deter [the entity or individual] from further abuses." Id. at 202.

legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it."[4]  Since those prongs are joined by the word "and," if the complaint is not deemed baseless, it logically follows that the attorney in effect conducted an adequate inquiry.  As will be shown, the questioned paragraph in the complaint here is not baseless, so that ends the inquiry.

### Relevant Background Facts

A chronology of relevant landmarks leading up to this point will demonstrate that the motion for sanctions is misguided, and that defendant is confusing two separate (though parallel) legal tacks plaintiff has pursued.  Throughout this chronology, they will be labeled as "before the agency" and "in court."

Before the agency (summary): One course plaintiff followed was his application directly to the Park Service under the Glacier Bay Compensation Plan.  This application was not couched in the exact terms of that plan, but rather consisted of what that agency termed his "derivative claims"[5] based on his ownership of Carl Aase's Glacier Bay fishing history.  As will be seen below, that application was eventually denied, and plaintiff never challenged that denial in court, here or elsewhere.

In court (summary):  The other tack plaintiff followed was this lawsuit, directed not at the Park Service, but at Mr. Aase.  In this litigation, plaintiff seeks the compensation that Mr. Aase was in the process of obtaining based on the fishing history

---

[4] Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005).
[5] Exhibit F, page 4.

that plaintiff now owns. Plaintiff's court claim is not premised on the compensation plan, but on the terms of the transaction between himself and Mr. Aase.

Before the agency: On April 5, 2002, the Park Service preliminarily denied plaintiff's application for compensation, and gave him a chance to administratively appeal that decision within the agency.[6] That decision never mentioned his lack of a current Glacier Bay crab permit (one technical requirement under the plan), but focused on what was the basis for his application – his ownership of Mr. Aase's fishing history:[7]

> You have not provided documentation of Glacier Bay Tanner Crab landings….While you have provided landing data for the F/V Northwyn, now owned by yourself, you did not make these landings. Only the permit holder of record for these landings is eligible for compensation. In this case, that permit holder is Carl Aase, the former owner of the Northwyn. The Glacier Bay Compensation Plan does not have any provisions to compensate applicants based on another individual's harvest history, only your own.

In court: Triggered by the realization that the Park Service could soon pay the money in dispute to Mr. Aase, on May 6, 2002, plaintiff filed the complaint in this lawsuit.[8] The only defendant named was Mr. Aase, and the complaint explained why Mr. Aase had no right to the money that would follow from ownership of the fishing history of the vessel in question. The complaint included paragraph 11, which set out some of the background of the situation before the court:

> The plaintiff submitted the necessary information to the Park Service in order to meet the requirements established by the Park Service, to obtain compensation for the commercial fishing closures in Glacier

---

[6] Exhibit A.
[7] Id.
[8] Exhibit B.

---

>Bay, using the landing history of the F/V NORTHWYN that he obtained from the State of Alaska's Commercial Fisheries Entry Commission.

Despite the inclusion of that background information, the complaint was premised on plaintiff's rights against Mr. Aase based on the transactions that had occurred between them. It was not premised on any wrong that plaintiff had suffered from the actions of the Park Service.

<u>Before the agency</u>: Later that month, on May 24, 2002, plaintiff administratively appealed the preliminary determination on plaintiff's own application to a higher level within the Park Service.[9] The appeal elaborated on the plaintiff's claim that he should be awarded the compensation in question directly from the Park Service because of his ownership of the <u>Northwyn</u>'s fishing history, rather than under the exact terms of the compensation plan.[10] Attached to the appeal was a copy of plaintiff's application,[11] in which he did not claim to hold a current Glacier Bay crab permit, but in which he explained his ownership of the <u>Northwyn</u>'s fishing history. He made no bones about the basis for his claim:[12]

>>I own a history of commercial fishing in Glacier Bay for the king and tanner crab fisheries that were made between 1989 and 1998.
>>….
>>Attached you will find a document that states that the previous owner, Carl Aase … agreed to, and did sell "all" the "fishing rights" and "fishing history" of the F/V Northwyn.

---

[9] Exhibit C.
[10] <u>Id</u>. at 2 – 4.
[11] <u>Id</u>. at 5 – 7.
[12] <u>Id</u>. at 5 and 7.

In court: Several months later, on September 11, 2002, plaintiff filed a first amended complaint, adding the Park Service as a defendant.[13] The agency was added as a party to facilitate an interpleader action, which was necessary because it held the money claimed by both Mr. Aase and plaintiff. The agency was not added because of its disposition of plaintiff's parallel, but quite separate, application for an award under the compensation plan. Indeed, that matter had not been disposed of, and was still pending administratively. The first amended complaint contained a paragraph 12 that was identical to paragraph 11 of the original complaint,[14] and was again included to provide background and context.

In court: On December 3, 2002, a default was entered against Mr. Aase because he had not filed an answer in the lawsuit.[15] Two months later, on February 3, 2003, plaintiff moved for a judgment based on that default.[16] The requested judgment was not against the Park Service, but against Mr. Aase.[17] The request for the judgment explained in some detail plaintiff's ownership of the fishing history of Mr. Aase's former vessel.[18]

The request for judgment did not hinge at all on the fact that plaintiff had a separate administrative appeal still pending before the Park Service. However, information about that parallel track was included as background of why plaintiff had sought aid from the court. Plaintiff's goal was to keep Mr. Aase from improperly

---

[13]   Exhibit D.
[14]   Exhibits B and D.
[15]   Exhibit E, page 1.
[16]   Exhibit E.
[17]   Id. at 7.
[18]   Id. at 2 – 4.

obtaining funds to which he had no right, and to which plaintiff was entitled.  As noted above, plaintiff's claim in court was not made under the terms of the compensation plan, but under the terms of the transaction between Mr. Aase and plaintiff.

The judgment was entered on March 18, 2003.  (It was later set aside on appeal for reasons unrelated to the allegations raised in this Rule 11 motion.)

Before the agency:  Meanwhile, on March 17, 2003, the Park Service notified plaintiff that it was denying his separate administrative appeal, attaching and incorporating a recommended hearing officer's decision from January 2003.[19]  This was the first time the Park Service had mentioned plaintiff's lack of a Glacier Bay crab permit,[20] yet the decision was based solely on that lack.[21]  It declined to address what it termed his "derivative claims" based on his ownership of the Northwyn's fishing history.[22]  The Park Service decision recognized the two parallel but separate tacks described here, and clarified explicitly that[23]

> This decision applies only to the application you filed on your own behalf for compensation.  This decision does not relate to your separate civil claim to compensation awarded to Carl Aase [citing this lawsuit].

In court: In April 2006, defendant provided Law Office with a copy of a proposed motion for sanctions on two grounds, under Federal Rule of Civil Procedure 11(c)(1)(A).  One of the challenges addressed paragraph 11 of the original complaint, and the identical

---

[19] Exhibit F.
[20] Id. at 3.
[21] Id. at 4.
[22] Id. at 4.
[23] Id. at 1.

paragraph 12 of the first amended complaint. Law Office responded with a letter outlining why Rule 11 had not been violated on either of the two listed grounds.[24] In the interest of simplification and clarification, he proposed that the paragraph in question could simply be dropped from the complaint (since it relates only to background), or could be reworded as follows:[25]

> The plaintiff submitted information to the Park Service to obtain compensation for the commercial fishing closures in Glacier Bay, using the landing history of the F/V NORTHWYN that he obtained from the State of Alaska's Commercial Fisheries Entry Commission.

The defendant rejected Law Office's proposed rewording of this background paragraph, and has now filed this motion for sanctions with the court (omitting mention of the other supposed ground for sanctions). This motion is not well taken.

## **Sanctions not Warranted or Appropriate Here**

In bringing this motion, defendant bears the burden of proving that Rule 11 was violated and that sanctions are appropriate. In an analogous situation, attorneys' fees that were sought because of alleged "bad faith or obdurate behavior" were denied because "petitioners [did] not sustain their burden of proof."[26] Similarly, in a case involving an attorney who allegedly "impugn[ed] the integrity of a judge or the court," the Ninth Circuit noted that the burden of proof lies on those bringing the accusations.[27]

---

[24] Exhibit G.
[25] Id.
[26] Tenants and Owners in Opp. to Redevelopment v. U.S. Dept. of Housing and Urban Dev., 406 F.Supp. 960, 964 (D.C. Cal. 1975).
[27] Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman, 55 F.3d 1430, 1438 (9th Cir. 1995).

---

In the motion for sanctions, defendant confuses the claims plaintiff has presented to this court in this lawsuit with the parallel (but not directly related) application plaintiff made to the Park Service. In this litigation, plaintiff did not seek compensation from the Park Service as a permit holder under the terms of the Glacier Bay Compensation Plan. Instead, he sought money from Mr. Aase that should come to plaintiff because he now owns Mr. Aase's fishing history.

Defendant's motion is directed at the wording of paragraph 11 of the original complaint,[28] and the identical paragraph 12 of the first amended complaint,[29] which both describe as background information his separate application to the Park Service:

> The plaintiff submitted the necessary information to the Park Service in order to meet the requirements established by the Park Service, to obtain compensation for the commercial fishing closures in Glacier Bay, using the landing history of the F/V NORTHWYN that he obtained from the State of Alaska's Commercial Fisheries Entry Commission.

Apparently, the assertion underlying defendant's motion for sanctions is that since plaintiff did not have and did not submit a Tanner crab fishery permit to the Park Service, it is incorrect to say that he submitted the "necessary" information to "to meet the requirements established by the Park Service," since such a permit was a specified requirement under the compensation plan.

It is certainly true that the plaintiff did not have, did not claim to have, and did not submit a Tanner crab fishery permit to the Park Service.[30] It is also true that the plan requires such a permit in its basic approach to awarding compensation.

---

[28]   Exhibit B.

Plaintiff's claim to the Park Service was, as that agency termed it, "derivative."[31] It was not that he qualified on his own as a permit holder directly under the terms of the plan. Rather, he claimed that he should receive compensation because of having purchased the history of Mr. Aase's former vessel, along with the vessel itself.[32] Thus, the wording defendant challenges merely describes for background purposes plaintiff's position with respect to his parallel but separate application to the Park Service – that he submitted all information necessary to support his derivative claim, which was not based on the terms of the plan, but rather on his ownership of Mr. Aase's fishing history.[33]

Defendant asserts that Law Office "should go on record explicitly stating that Mr. Moran could not have qualified for Permit Holder Compensation from the agency and that he was wrong when he made those representations to the Court."[34] However, he was not wrong when he made those representations.

The chronology in the background section above shows that both the complaint[35] and the first amended complaint[36] were filed months before the Park Service finally ruled on plaintiff's separate application.[37] Until that ruling, the Park Service had been considering plaintiff's claim that he should receive compensation based on owning the

---

[29]  Exhibit D.
[30]  Exhibit C, pages 5 – 7.
[31]  Exhibit F, page 4.
[32]  Exhibit C.
[33]  Id.
[34]  Defendant's May 3, 2006, Motion for Rule 11 Sanction, page 6.
[35]  Exhibit B.
[36]  Exhibit D.
[37]  Exhibit F.

---

fishing history, [38] and – for all plaintiff and Law Office knew when the complaints were filed – it might have ultimately ruled in his favor on what it termed his "derivative claims."[39] Indeed, although the agency did eventually conclude that plaintiff's lack of a current permit foreclosed further discussion of an award under the specific terms of the compensation plan,[40] it specified explicitly that its "decision does not relate to [plaintiff's] separate civil claim to compensation awarded to Carl Aase," specifically citing this lawsuit.[41]

Thus, the timing of the complaint and the first amended complaint, compared to the timing of the Park Service ruling on plaintiff's parallel but separate application, means that each time the paragraph in question was presented to the court no one yet knew whether plaintiff's derivative claims to that agency would be successful. And certainly, all "necessary" information had been submitted to the Park Service to support those derivative claims.

Further, plaintiff's parallel but separate application to the Park Service is not relevant to this lawsuit, except as background. His position in this case has been consistent from the outset. His claim is that he is entitled to the money awarded by the Park Service to Mr. Aase because of his ownership of the vessel's history, not because the Park Service failed to grant his separate application for compensation.

---

[38]   Exhibits A and C.
[39]   Exhibit F, page 4.
[40]   Id. at 4.
[41]   Id. at 1.

The paragraph in question in each of the two complaint iterations was included simply by way of background.  The focus of the complaint is not at all that plaintiff should be awarded the compensation as a result of his application to the Park Service, but rather because he owns the fishing history of the vessel.[42]

Consistent with that, the original complaint was not filed against the Park Service at all, but was instead filed solely against Mr. Aase, seeking the funds which plaintiff claimed as a result of purchasing the history of the vessel, along with the vessel.[43]  The first amended complaint added the Park Service as a defendant, but only to facilitate an interpleader, since that agency held the funds that both plaintiff and Mr. Aase claimed.[44]

In evaluating the allegations defendant makes about this paragraph, it is helpful to review what the Ninth Circuit has said about how cautiously Rule 11 must be applied:[45]

> The application of Rule 11 is a task that requires sensitivity to two competing considerations. On the one hand, the perception underlying the Rule is that on occasion attorneys engage in litigation tactics so vexatious as to be unjustifiable even within the broad bounds of our adversarial system, and that neither the other parties nor the courts should have to abide such behavior or waste time and money coping with it. … On the other hand, both the Rule itself and our application of the Rule recognize that our system of litigation *is* an adversary one, and that presenting the facts and law as favorably as fairly possible in favor of one's client is the nub of the lawyer's task. Judges therefore should impose sanctions on lawyers for their mode of advocacy only in the most egregious situations, lest lawyers be deterred from vigorous representation of their clients.

---

[42]   Exhibits B and D.
[43]   Exhibit B.
[44]   Exhibit D.
[45]   United Nat. Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1115 (9th Cir. 2001) (emphasis in original).

The choice of language in the paragraph in question does not resemble the kind of misuse that courts have required before finding a violation of Rule 11.  For example, the Ninth Circuit has held that these sanctions are appropriate in the case of "an attorney who filed a legally baseless complaint."[46]  An example of such a flawed complaint was one alleging civil rights violations of people who were not a part of any racial group, but were allegedly "members of the protected class of consumers looking to build their dream home."[47]  With no case law to support such a group being included in the protections of civil rights laws, and no likelihood of the scope of the law being broadened to encompass such a group -- as well as having additional weaknesses -- that complaint was deemed totally frivolous, and sanctions were found appropriate.[48]  The situation in this case is far removed from that.

Also, it is not remotely similar to a case where Rule 11 sanctions were found appropriate because an attorney had "made mistakes, misinterpreted the evidence, overstated the facts or made hyper-technical or improper objections approximately *thirty-four* times."[49]  There, the attorney's actions could

> not be interpreted as anything other than a bad faith attempt to mislead the Court, obscure the real facts of the case, to obstruct, and/or harass the [other party]. This was an effort to either wear down the [other party] or to win a victory … that was clearly unjustified by either the facts or the law.[50]

---

[46]  Holgate, 425 F.3d at 674.
[47]  Id. at 676.
[48]  Id.
[49]  Moser, 366 F.Supp. 2d at 976 (emphasis in original).
[50]  Id. at 978.

---

In contrast, sanctions under this rule would not be triggered by a situation like the one here, where the wording of one paragraph of the complaint was an accurate characterization of the basis of plaintiff's parallel but separate application to the Park Service. This is especially true when that paragraph was simply providing background and context, rather than a key element of the claim presented by the litigation.

The paragraph describes plaintiff's parallel request to the Park Service that it award him the money in question under the compensation plan, based not on the terms of the plan, but instead on his ownership of the vessel's history.[51] Ultimately, the agency declined to do so, and plaintiff chose not to pursue that avenue in court.[52] The claim in this case has never been directed at that issue, nor at the Park Service -- which is named in this case only because it held the money in dispute between plaintiff and Mr. Aase.

In considering whether wording in a complaint were substantial enough to warrant Rule 11 sanctions, the Ninth Circuit has noted that "plaintiffs [are not required] to lay out in detail [in a complaint] the *facts* upon which their claims are based."[53] Instead, they are required "to provide 'a short and plain statement of the claim' to give the defendants fair notice of what the claim is and the grounds upon which it is based."[54] If a complaint totally omits elements of a claim, for example, it "fails even this minimal test," and is

---

[51]  Exhibit C.
[52]  Exhibit F.
[53]  Holgate, 425 F.3d at 676.
[54]  Id.

sanctionable as frivolous.[55]  No key element has been omitted from the complaint here, nor has any key element been falsified or mischaracterized.

As discussed, the paragraph in question is not incorrect.  It is a characterization for background purposes of plaintiff's assessment of his parallel but separate application to the Park Service.  Furthermore, its inclusion in the complaint had no impact on the direction or outcome of this case.  That background information had no bearing on the default judgment requested and obtained by plaintiff.[56]  The court awarded the judgment based on default on the claim set out in the first amended complaint – that plaintiff was entitled to Mr. Aase's award because he had purchased his vessel and its history.  The default and the judgment based on it came about not because of the paragraph in question, but because Mr. Aase failed to respond to service of the first amended complaint within the established time-frame.

This litigation does not hinge on the Park Service's denial of plaintiff's separate application.  Similarly, the default plaintiff obtained was not premised in any way on the Park Service's decision on that application.  The result of the request for the judgment based on the default would not have been different if the paragraph in question had been omitted from the first amended complaint, or if the suggested substitute language mentioned in the background section above had been used instead.[57]

---

[55]   Id. at 677.
[56]   Exhibit E.
[57]   That suggested substitute language was: "The plaintiff submitted information to the Park Service to obtain compensation for the commercial fishing closures in Glacier Bay, using the landing history of the F/V NORTHWYN that he obtained from the State of Alaska's Commercial Fisheries Entry Commission." Exhibit G.

---

If Mr. Aase suffered "much expense, grief, and heartache" and "severe distress before he died" it was not as a consequence of the wording of this paragraph.[58] The default was taken against him because he failed to answer the first amended complaint. The judgment that followed that default was based on plaintiff's claims against <u>him</u>, not on plaintiff's separate application to the Park Service (the denial of which has never been challenged in any lawsuit, let alone this one).

In sum, the paragraph in question is accurate. It describes background information only. Its inclusion in the first amended complaint had no bearing on the judgment based on default that plaintiff obtained. No violation of Rule 11 occurred here.

## **Conclusion**

This opposition has demonstrated that defendant's Motion for Rule 11 Sanction is ill founded, for at least three reasons. First, the paragraph challenged by defendant accurately reflects plaintiff's characterization of his parallel but separate claim to the Park Service. Simply because that agency ultimately denied that claim does not mean the description of it in the paragraph is incorrect.

Second, the paragraph was included solely to provide background to the court of the whole history leading up to this litigation. It does not contain anything that is pivotal or critical to the claim plaintiff presents in this lawsuit. His claim here is (and has always been) against defendant based on the transaction between them, not against the Park Service based on the terms of the Glacier Bay Compensation Plan.

---

[58] Defendant's May 3, 2006, Motion for Rule 11 Sanction, pages 6 and 8.

Finally, it is wholly unreasonable for defendant to assert that the court would have relied on the paragraph in question at all when it entered the default judgment. That judgment followed Mr. Aase's failure to respond to the first amended complaint – a complaint which hinges (as did the original) on plaintiff's claim that he (plaintiff) was entitled to the money that Mr. Aase was about to receive from the Park Service. The claim is based on the interactions between plaintiff and Mr. Aase. Neither the complaint nor the default was based in any way on plaintiff's parallel but separate (and ultimately unsuccessful) application to the Park Service for the compensation. For all these reasons, the Motion for Rule 11 Sanctions must be denied.

Dated this 15th day of May, 2006.

**LAW OFFICE OF BRUCE B. WEYHRAUCH, LLC**

By:   /s/ Bruce B. Weyhrauch

Bruce B. Weyhrauch, Formerly of Attorneys for Plaintiff
114 South Franklin St. Suite 200
Juneau, Alaska 99801
Phone: (907) 463-5566
Fax: (907) 463-5858
E-mail: whyrock@gci.net
Alaska Bar Number: 8706057

**CERTIFICATE OF FILING AND SERVICE**

The undersigned certifies that on May 15, 2006, a copy of the foregoing was filed electronically and that a copy of the foregoing document was served electronically on:

Shane Carew PS
5450 California Ave SW Suite 101
Seattle WA 98136

James Reeves
Dorsey & Whitney LLP
1031 W Fourth Ave Suite 600
Anchorage AK 99501-5907

I understand that notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

            s/  Bruce B. Weyhrauch
               114 South Franklin St. Suite 200
               Juneau, Alaska 99801
               Phone: (907) 463-5566
               Fax: (907) 463-5858
               E-mail: whyrock@gci.net
               Alaska Bar Number: 8706057

_____

Moran v. Aase, J-02-011 (JWS)                  Page 18 of 18
Opposition to Motion for Rule 11 Sanctions