LAW OFFICE OF
Bruce B. Weyhrauch, LLC
whyrock@gici.net
114 S. Franklin St.
Suite 200
Juneau, Alaska 99801
Telephone: (907) 463-5566      Fax: (907) 463-5566

April 28, 2006

**VIA FACSIMILE**

Mr. Shane Carew
5450 California Avenue SW
Suite 101
Seattle Washington 98136

    Re:    Moran v. Aase & National Park, 03-35966
           Our File:    203.253

Dear Shane:

    We have examined your proposed motion for sanctions under Federal Rule of Civil Procedure 11. Rule 11 basically mandates that those making claims and presenting allegations to a court do so honestly, and makes those who stray from that principle accountable.[1]

---

[1] The Rule provides that "by presenting to the court … a pleading … an attorney … is certifying … to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "the claims … and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and that] the allegations … have evidentiary support…." Federal Rule of Civil Procedure 11(b).

Your raised two instances that you assert call for correction or sanctions. Upon close scrutiny of the time frame involved, one of those instances does not mean what you may have been led to believe it does. The other instance we do not agree is necessarily problematical, but could be clarified by merely substituting other language.

Supposed Omission in the February 3, 2003, Memorandum

One of the points presented in the Rule 11 motion is a supposed omission in the February 3, 2003 Memorandum in Support of Motion for a Judgment Based on Entry of Default. The wording focused on is "Mr. Moran has appealed this decision," referring to the initial National Park Service decision denying his application for Glacier Bay compensation. The information supposedly omitted is any reference to the fact that Mr. Moran's administrative appeal was denied.

You infer that since the hearing officer's recommended denial was concurred with by the National Park Service's Regional Director on January 22, 2003, we must have known about that when the memorandum in question was signed. We do not agree that the reference to the administrative appeal had significant bearing on the motion for entry of judgment. However, whether it did or did not, the fact is that we could not have known about the recommended decision denying the appeal when the memorandum in question was filed on February 3. This impossibility is because the recommended decision was not forwarded to us (for Mr. Moran) until March 17, as an attachment to the final determination letter from the National Park Service on all three of Mr. Moran's applications for compensation.

We enclose a copy of that March 17 letter, which explains:

If you filed an appeal, a copy of the hearing officer's recommendation is attached. Unless otherwise noted, the hearing officer's recommendation is adopted as the written basis of the final decision. This decision does not relate to your separate civil claim to compensation awarded to Carl Aase.
….

> This letter is the final decision for your compensation application. There are no further administrative appeals that may be made concerning your claim.

As you can see, until the March 17, 2003 Park Service letter was sent to Mr. Moran, we were unaware of the recommended (and, as it turns out, ultimate) decision on Mr. Moran's administrative appeal. We thus could not have described the results in the February 3 memorandum in question.

<u>Wording of Paragraph 11/12 of Complaints</u>

The other point presented in the Rule 11 motion is the wording of paragraph 11 of the original complaint, and the identical paragraph 12 of the first amended complaint:

> The plaintiff submitted the necessary information to the Park Service in order to meet the requirements established by the Park Service, to obtain compensation for the commercial fishing closures in Glacier Bay, using the landing history of the F/V NORTHWYN that he obtained from the State of Alaska's Commercial Fisheries Entry Commission.

As we understand it, the assertion here is that since Mr. Moran did not have and did not submit a Tanner crab fishery permit, it is incorrect to say that he submitted the "necessary" information to "to meet the requirements established by the Park Service," since such a permit was a specified requirement under the compensation plan.

Mr. Moran did not have, did not claim to have, and did not submit a Tanner crab fishery permit. It is also true that the basic approach to awarding compensation established by the plan requires such a permit. Thus, the words used in the complaint could have been different.

However, the thrust of Mr. Moran's claim all along to both the Park Service and to the court has not been that he qualified on his own under the terms of the compensation plan. Rather, his claim has been and is that he should receive the compensation at issue because of having purchased the history of Mr. Aase's former vessel. Thus, the wording you question was intended to convey the thrust of this position – that Mr. Moran had submitted

all the information he believed was necessary to support his claim to the Park Service, which was not based on the terms of the plan, but rather on the purchase and ownership of that fishing history.

The paragraph in question in each of the two complaint iterations was included simply by way of background. The focus of the complaint is not that Mr. Moran should be awarded the compensation as a result of his application to the Park Service, but rather because he owns vessel's fishing history.

Consistent with that, the original complaint was not filed against the Park Service at all, but was instead filed solely against Mr. Aase, seeking the funds which Mr. Moran claimed as a result of purchasing the history of the vessel. The first amended complaint added the Park Service as a defendant upon approved motion to the court, but only to facilitate an interpleader, since that agency held the funds that both Mr. Moran and Mr. Aase claimed.

In evaluating the concerns you raise about this paragraph, we have kept in mind that the Ninth Circuit has said that Rule 11 must be applied cautiously.[2] Any inaccuracy in the language of the paragraph in question does not rise to the kind of misuse that courts have required before finding a violation of Rule 11, and that sanctions under the rule are warranted. For example, the Ninth Circuit has noted that these sanctions are appropriate in the case of "an attorney who filed a legally baseless complaint."[3] An example of such a flawed complaint was one alleging civil rights violations of people who were not a part of any racial group, but were allegedly simply "members of the protected class of consumers looking to build their dream home."[4] With no case law to support such a group being included in the protections of civil

---

[2] *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001) (emphasis in original). "The application of Rule 11 is a task that requires sensitivity to two competing considerations. On the one hand, the perception underlying the Rule is that on occasion attorneys engage in litigation tactics so vexatious as to be unjustifiable even within the broad bounds of our adversarial system, and that neither the other parties nor the courts should have to abide such behavior or waste time and money coping with it. ... On the other hand, both the Rule itself and our application of the Rule recognize that our system of litigation *is* an adversary one, and that presenting the facts and law as favorably as fairly possible in favor of one's client is the nub of the lawyer's task. Judges therefore should impose sanctions on lawyers for their mode of advocacy only in the most egregious situations, lest lawyers be deterred from vigorous representation of their clients.

[3]     *Holgate v. Baldwin*, 425 F.3d 671, 674 (9th Cir. 2005).

[4]     *Id.* at 676.

rights laws, and no likelihood of the scope of the law being broadened to encompass such a group, as well as additional weaknesses, that complaint was deemed totally frivolous, and sanctions were found appropriate.[5]

This situation before us is far removed from that example.

Also, it is not remotely similar to a case where Rule 11 sanctions were found appropriate because an attorney had "made mistakes, misinterpreted the evidence, overstated the facts or made hyper-technical or improper objections approximately *thirty-four* times."[6]

The paragraph in question could be omitted in an additional amended complaint, since the information alluded to is not at all central to the Mr. Moran's claims in the litigation, but rather was included only to provide a fuller picture of events. An alternative to omitting the paragraph could be the following:

> The plaintiff submitted information to the Park Service to obtain compensation for the commercial fishing closures in Glacier Bay, using the landing history of the F/V NORTHWYN that he obtained from the State of Alaska's Commercial Fisheries Entry Commission.

Either dropping the paragraph altogether or making this change would be consistent with judicial guidance.[7]

We want to be clear that whatever approach might be mutually agreed upon as a way of clarifying what occurred with respect to Mr. Moran's application, in our view that background information had no bearing on the default judgment obtained by Mr. Moran. Mr. Moran's position in this litigation has been consistent from the outset. His claim is that he is entitled to the money awarded by the Park Service to Mr. Aase because of his ownership of the vessel's history, not because the Park Service failed to grant Mr. Moran's separate application for compensation.

---

[5]   *Id.*

[6]   *Moser v. Bret Harte Union High School Dist.*, 366 F.Supp.2d 944, 976 (E.D.Cal. 2005) (emphasis in original).

[7]   *Stewart v. American Intern. Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988).

Thus, even with the wording of the paragraph in question, when the court awarded the default to Mr. Moran it was doing so on the claim set out in the complaint – that Mr. Moran was entitled to Mr. Aase's award because he had purchased his vessel and its history. The claim in this litigation does not address the Park Service's denial of Mr. Moran's application, and similarly, the default he obtained was not premised in any way on the Park Service's decision. Thus, the result of the request for the judgment based on the default would not have been different if the paragraph in question had been omitted from the complaint, or if the substitute language suggested above had been used instead.

        Very truly yours,

        Bruce B. Weyhrauch

Enclosure

C:     Jim Reeves w/enclosure