UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

ANTHONY MORAN,              )
                            )
          Plaintiff,        )      1:02-cv-00011 JWS
                            )
     vs.                    )      ORDER FROM CHAMBERS
                            )
ESTATE OF CARL AASE,        )      [Re:  Motions at Docket Numbers
                            )            60, 70, 72, and 79]
          Defendant.        )
_____)

## I.  MOTIONS PRESENTED

At docket 60, defendant Estate of Carl Aase moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  At docket 70, plaintiff Anthony Moran moves for leave to file a second amended complaint.  At docket 72, defendant moves for partial summary judgment regarding plaintiff's claim that defendant sold his Glacier Bay Commercial Fishing Compensation Program rights in an addendum.  At docket 79, defendant moves for partial summary judgment on plaintiff's appurtenance of vessel theory.  All of the motions are fully briefed. Oral argument was not requested on any of the motions, and it would not assist the court.

## II.  BACKGROUND

Carl Aase, defendant's decedent, owned and operated the fishing vessel *NORTHWYN* in the 1980's and 1990's.  On May 5, 1999, Tony Moran bought the *F/V*

*NORTHWYN* at a Marshal's auction, after mortgagee Northwest Farm Credit foreclosed on it.   On May 21, 1999, the $23 million funding for the Glacier Bay Commercial Fishing Compensation Program ("Compensation Program" or "GBCFCP") was authorized by Section 501 of the 1999 Emergency Supplemental Appropriations Act.  The Compensation Program was intended to fairly compensate fish processors, permit holders, crew members, and others negatively affected by restrictions on fishing in Glacier Bay National Park.

On December 17, 1999, Tony Moran and Carl Aase executed a document titled "Addendum," stating:

> Seller & and Owner, Carl Aase for Alaska Sunset Inc. hereby agrees that for the additional amount of Three thousand & no/100 ($3000.00) Seller is in agreement that "all" the "Fishing Rights" or "Fishing History" of the F/V NORTHWYN have been included in this sale of the F/V NORTHWYN (signed on May 5, 1999.)  It is understood and agreed by all parties that the "[F]ishing Rights" to be transferred with the F/V NORTHWYN would be all the fishing history referred to in either the "FEDERAL VESSEL MORATORIUM RIGHT" and/or the new LLP PROGRAM.  (License Limitation Program).  Although any State Fishing Permits or IFQ's currently held by the Alaska Sunset Inc. or Carl Aase.[1]

In 2001, the National Park Service began accepting applications for compensation under the Compensation Program.  The eligibility criteria for permit holder compensation were: 1) current ownership of an Alaska limited entry permit, or IFQ share, for each fishery for which compensation is sought and 2) "[a] history of commercial fishing in Glacier Bay proper for each fishery for which compensation is being sought during the qualifying eligibility period (1989-1998)."[2]  The Compensation Program also required that all permit holders seeking compensation provide a "[c]opy of current permit for each fishery for which you are seeking compensation (Tanner pot,

---

[1]Doc. 23, exh. 1.

[2]Compensation Program at 20, app. B, doc.67

Tanner Ring, halibut, Dungeness crab, power troll, hand troll, King crab, and/or groundfish)."[3]

Aase applied for compensation as a tanner crab pot permit holder under the Compensation Program. On March 17, 2003, Aase was notified that he was entitled to $593,502.96 in compensation based on his harvesting of 243,416 pounds of tanner crab from Glacier Bay during the qualifying period of 1989 - 1998. Aase was also awarded $11,793.89 for the lost value of his Alaska limited entry tanner crab permit.

Moran also applied for compensation under the Compensation Program as a permit holder for the tanner crab pot fishery.[4] The National Park Service denied Moran's application for compensation as a permit holder on April 5, 2002, on the grounds that Moran did not provide documentation of his own Glacier Bay tanner crab landings.[5] The Park Service specifically stated: "While you have provided landing data for the F/V Northwyn, now owned by yourself, you did not make these landings. Only the permit holder of record for these landings is eligible for compensation."[6] Moran appealed the National Park Service's decision.

On May 6, 2002, Moran filed the underlying complaint against Aase, alleging that after Moran purchased the *F/V NORTHWYN* and "her... appurtenances," Aase transferred all the fishing rights and fishing history of the *F/V NORTHWYN*, including his rights to GBCFCP compensation, to Moran in the Addendum.[7] Moran subsequently filed a first amended complaint.[8] On November 25, 2002, Moran filed a motion for entry

---

[3]*Id.*

[4]Doc. 72, exh. E.

[5]Doc. 23, exh. 3.

[6]*Id.*

[7]Doc. 1.

[8]Doc. 10. Plaintiff's first amended complaint joined the United States as a defendant. The United States was dismissed as a party at docket 44.

of default on the grounds that Aase failed to file an answer.[9]  The court entered default by minute order dated December 3, 2002.[10]

In January 2003, the United States Department of the Interior upheld the Park Service's decision denying Moran's application for compensation as a tanner crab pot permit holder.  The decision states in pertinent part:

> ...the fact remains that Appellant did not, and could not produce [a] "copy of current permit for each fishery for which you are seeking compensation (Tanner pot, Tanner ring, halibut, Dungeness crab, power troll, hand troll, King crab and/or groundfish)"  Compensation Plan, page 18.  Absent this documentation, Appellant cannot be compensated.[11]

On February 3, 2003, Moran filed a motion for entry of default judgment, which the court granted.[12]  Judgment was entered on March 18, 2003, stating that plaintiff is entitled to all funds finally awarded under the Compensation Program designated for defendant Aase as a tanner crab permit holder based on landings made from the *F/V NORTHWYN*.[13]

On July 11, 2003, the court entered a stipulated order directing the National Park Service to pay the undisputed amount of $11,763.89 for lost tanner crab pot permit value to Carl Aase.[14]  The stipulated order explicitly states that "[d]efendant Carl Aase still owns the state tanner crab permit" and that "[p]laintiff Moran agrees he is not entitled to this payment."[15]

---

[9]Doc. 17.

[10]Doc. 18.

[11]Doc. 69, exh.1 at 9.

[12]Doc. 25.

[13]Doc. 27.

[14]Order (July 11, 2003) at 2, doc. 38.

[15]*Id.*

On October 5, 2003, the court entered final judgment in favor of plaintiff Moran and against defendant Aase, stating that Moran has a right to the $581,739.08 in funds awarded under the Compensation Program to defendant Aase and ordering the National Park Service to pay the above compensation to the registry of the court until any appellate review of the judgment is final.[16]  Defendant appealed the court's order entering final judgment to the Ninth Circuit Court of Appeals.[17]

Carl Aase died on September 3, 2004, after which the Ninth Circuit substituted Angela Aase Elam, in her capacity as the administrator of the Estate of Carl Aase, as defendant.  On August 30, 2005, the Ninth Circuit issued a memorandum decision, remanding this matter back to district court for further proceedings on the merits.[18]

On January 18, 2006, defendant filed a motion to dismiss plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[19]  On March 13, 2006, plaintiff filed a motion for leave to file a second amended complaint.[20]  On March 23, 2006, defendant filed a motion for partial summary judgment dismissing plaintiff's claim that Aase sold his GBCFCP rights in the Addendeum.[21]  On March 31, 2006, defendant filed a motion for partial summary judgment on plaintiff's appurtenance of vessel theory.[22]  The motions are all fully briefed and are ripe for the court's review.

---

[16]Doc. 44.

[17]Doc. 47A.

[18]Doc. 54.

[19]Doc. 60.

[20]Doc. 70.

[21]Doc. 72.

[22]Doc. 79.

## III.  DISCUSSION

### A.    Motion for Leave to File Second Amended Complaint

Plaintiff moves for leave to file a second amended complaint pursuant to Federal Rule of Civil Procedure 15(a).  Plaintiff specifically seeks to add a claim for unjust enrichment and to impose a constructive trust on the GBCFCP funds currently held in the court's registry.  Defendant opposes plaintiff's motion to amend on the grounds that it is futile.  The court concurs.

Rule 15(a) provides that after a responsive pleading is served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Liberality in granting leave to amend is subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice, is not sought in bad faith, and does not constitute an exercise in futility.[23]  These factors are not given equal weight.  Futility of amendment by itself can justify the denial of a motion for leave to amend.[24]  "[F]utility includes the inevitability of a claim's defeat on summary judgment."[25]

Plaintiff seeks to amend his complaint to add a claim for unjust enrichment, alleging that defendant's retention of GBCFCP compensation would constitute unjust enrichment because "[d]efendant's decedent was a retired fisherman" and compensation was awarded under GBFCP "for the purpose of making active fishermen such as plaintiff whole with respect to future loss of income from anticipated commercial fishing activity."[26]  Plaintiff also seeks to impose a constructive trust requiring all GBCFCP funds awarded to defendant to be paid to plaintiff.  Plaintiff's proposed second amended complaint further alleges: 1) that the sale of the *F/V NORTHWYN* included all "necessaries appertaining and belonging to the vessel," which by law  "included all

---

[23]*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

[24]*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 1999).

[25]*Johnson v. American Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987).

[26]Proposed Second Amended Complaint at 3-4, attached to doc. 70.

fishing permits used in the operation of the vessel,"[27] and 2) that by executing the Addendum, Aase "confirmed that the sale of the vessel resulted in a transfer of the ownership of the fishing permits and the fishing history" and that "[a]s a consequence of this agreement, plaintiff owns the fishing permits and the fishing history."[28]

Plaintiff's motion for leave to file a second amended complaint is futile for several reasons. First, "[u]njust enrichment is an equitable rather than a legal claim; consequently, no action for unjust enrichment lies where a contract governs the parties' relationship to each other."[29] Here, plaintiff's proposed second amended complaint cites two contracts that govern the parties' relationship to each other, namely the Preferred Mortgage of Vessel and the Addendum.[30]

Second, plaintiff cannot provide clear and convincing proof that the funds at issue rightly belong to plaintiff. "A constructive trust is an equitable remedy that becomes available upon clear and convincing proof that the party against whom the trust will be imposed has been unjustly enriched by receiving assets that rightly belong to the party in whose favor the trust will be created."[31] "At a minimum ... a constructive trust presupposes a transfer or holding of property in which the equitable beneficiary has a legal interest and unconscionable conduct by the property's holder in connection with its acquisition."[32]

Here, plaintiff cannot provide clear and convincing proof that he owned a tanner crab limited entry permit, which is one of the undisputed requirements for receiving compensation as a permit holder under the Compensation Program. In his deposition, Moran testified that he did not own a permit for fishing crab when he applied for

---

[27]*Id.* at 2.

[28]*Id.*

[29]*McKesson HBOC v. New York State Common Retirement*, 339 F.3d 1087, 1091 (9th Cir. 2003).

[30]Proposed Second Amended Complaint at 2, doc. 70

[31]*Riddell v. Edwards*, 76 P.3d 847, 852 (Alaska 2003).

[32]*Id.*

compensation under the Compensation Program.[33]  Furthermore, the stipulated order entered in this matter on July 11, 2003, explicitly states that "[d]efendant Carl Aase still owns the state tanner crab permit."[34]  "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."[35]

For the reasons stated above, plaintiff's motion for leave to file an amended complaint is denied on grounds of futility.

**B.    Defendant's Motions for Partial Summary Judgment**

Defendant moves for partial summary judgment dismissing plaintiff's claims that defendant sold or transferred his rights to compensation under the Compensation Program to plaintiff as either an appurtenance of the vessel or in the Addendum. Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law.  The moving party has the burden to show that material facts are not genuinely disputed.[36]  To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[37]  Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue of fact exists by presenting evidence indicating that certain facts are disputed so that a fact-finder must resolve the dispute at trial.[38]

Plaintiff's first amended complaint alleges that in the Addendum "Aase sold to the plaintiff all the fishing rights and fishing history of the F/V Northwyn," including the

---

[33]Deposition of Anthony Moran at 14, doc. 71.

[34]*Id.*

[35]*Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2001); *Minidoka Irrigation Dist. v. Department of Interior of U.S.*, 406 F.3d 567, 573 (9th Cir. 2005).

[36]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[37]*Id.* at 325.

[38]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

"rights to commercial fishing compensation related to Glacier Bay commercial fishing closures."[39]  However, for the reasons stated below, there is no genuine issue of fact regarding whether Aase's right to compensation under the Compensation Program was transferred in the Addendum.

The Addendum states in pertinent part that "[i]t is understood and agreed by all parties that the '[F]ishing Rights' to be transferred with the F/V NORTHWYN would be all the fishing history referred to in either the 'FEDERAL VESSEL MORATORIUM RIGHT' and/or the new LLP PROGRAM," not  "any State Fishing Permits or IFQ's currently held by the Alaska Sunset Inc. or Carl Aase.[40]  In fact, in its order dated June 16, 2003, the court found that the Addendum "specifically excluded 'State Fishing Permits or IFQ's currently held by Alaska Sunset Inc. or Carl Aase.'"[41] Moreover, in his deposition Moran testified that he offered Aase $3,000 for the sale of the LLP in the Addendum, and that the parties did not talk about the Glacier Bay Compensation Program in December 1999 when they executed the Addendum.[42]  Plaintiff does not present any evidence that these facts are disputed.

Because plaintiff has failed to meet his burden of demonstrating that a genuine issue of material fact exists, defendant is entitled to summary judgment dismissing Moran's claim that Aase transferred his rights to any potential GBCFCP compensation to Moran in the Addendum.

Defendant also moves for summary judgment dismissing plaintiff's appurtenance of vessel theory.  In plaintiff's first amended complaint, plaintiff alleges that he purchased the *F/V NORTHWYN* and "her...appurtenances" at a U.S. Marshal sale.[43]  In his opposition to defendant's motion for partial summary judgment, plaintiff alleges that

---

[39]Doc. 10 at 3.

[40]Doc. 23, exh. 1.

[41]Doc. 35 at 2.

[42]Doc. 72, exh. D at 2-3.

[43]Doc. 10 at 1.

"[a]s a matter of law, these 'appurtenances' include the fishing history of the vessel."[44] Plaintiff does not cite any controlling authority supporting the proposition that, as a matter of law, a vessel's fishing history is an appurtenance that passes with the sale of the vessel.  Rather, plaintiff cites a First Circuit case discussing whether fishing permits are appurtenances which transfer with a vessel.[45]  This case is inapplicable here because it has already been established that Aase's tanner crab permit did not transfer with the vessel.

Moreover, even if plaintiff were to establish that Aase's tanner pot fishing history transferred as a matter of law with the sale of the *F/V NORTHWYN*, defendant would still be entitled to judgment as a matter of law dismissing plaintiff's claim of entitlement to the compensation awarded to Aase under GBCFCP.  It is undisputed that one of the requirements for receiving compensation as a permit holder under the Compensation Program is current ownership of an Alaska limited entry permit for each fishery for which compensation is sought.  It is also undisputed that plaintiff did not own a tanner crab pot permit when he applied for compensation as a permit holder under the Compensation Program.[46]

Because there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law, the court will dismiss plaintiff's claim of entitlement to any compensation funds the National Park Service designated for Carl Aase as a tanner crab permit holder.  Accordingly, the court will grant defendant's motions for partial summary judgment and deny defendant's Rule 12(b)(6) motion to dismiss as moot.

## IV.  CONCLUSION

For the reasons set out above, plaintiff's motion at docket 70 for leave to file a second amended complaint is **DENIED**, defendant's motion to dismiss at docket 60 is

---

[44]Doc. 84 at 3.

[45]*Gowen, Inc. v. F/V Quality One*, 244 F.3d 64 (1st Cir. 2001).

[46]Deposition of Anthony Moran at 14, doc. 71.

**DENIED AS MOOT**.  It is further ordered that defendant's motions at docket 72 and 79 for partial summary judgment are **GRANTED**, and plaintiff's claim for entitlement to the compensation awarded to Carl Aase is **DISMISSED**.

 This order disposes of plaintiff's claims.  The clerk will please enter judgment that plaintiff take nothing from defendant.  The clerk is further directed to retain the funds on deposit in the court's registry pending conclusion of any further appellate proceedings or further order of the court.  The court will address the motion at docket 87 in due course.

 DATED at Anchorage, Alaska, this 1st day of June 2006.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT COURT JUDGE