UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| ANTHONY MORAN, | ) |
|               Plaintiff, | )    1:02-cv-00011JWS |
| vs. | )    OPINION AND ORDER |
| | )    FOR RELEASE OF FUNDS |
| ESTATE OF CARL AASE, | ) |
| | )    [Re:   Motions at dockets 102 |
|               Defendant. | )           and 108] |

## I. MOTIONS PRESENTED

At docket 102, defendant Estate of Carl Aase moves for an order directing the Clerk to release the funds on deposit in the Registry of the Court to defendant. The motion is opposed at docket 108, where plaintiff cross-moves for an order staying the release of the funds pending resolution of the appeal in this case. The matter has been fully briefed, oral argument has not been requested, and oral argument would not assist the court.

## II. BACKGROUND

Plaintiff Anthony Moran filed a complaint against defendant's predecessor in interest, decedent Carl Aase. The gravamen of that complaint was that Aase had transferred the fishing history of the F/V NORTHWYN to Moran. The fishing history was alleged to be that relevant to the receipt of certain compensation from the United States Park Service pursuant to the Glacier Bay Commercial Fishing Program ("Program"). The complaint recited that both Moran and Aase had applied for compensation under

the Program.  Moran sought an order requiring the Park Service to pay the compensation, a sum in excess of a half million dollars, to Moran rather than Aase.

The complaint was amended to add the United States Park Service ("Park Service") as a defendant.[1]  Doubtless wishing to protect itself from the possibility that it might somehow be required to pay both Moran and Aase, the park Service filed an amended answer which included a cross-claim for interpleader of the funds.  Aase failed to respond to the complaint, and the Clerk entered his default.[2]  Plaintiff moved for default judgment against Aase.  The motion was granted.[3]  Carl Aase moved unsuccessfully to have the default set aside.  Thereafter, the court entered a final judgment, which stated that the $581,739.08 which would remain in dispute if Aase were to succeed in getting the default set aside on appeal "will be held [in the court registry] until appellate review, if any, of this judgment is final."[4]  The Park Service was dismissed as a party.

The default judgment was reversed on appeal.  Following further motion practice, this court granted summary judgment to defendant on the merits.  Judgment was entered in the Estate's favor against Moran.[5]  Moran has appealed.[6]  The Estate wants the money which has been held in the registry; Moran wants it to remain there pending the outcome on appeal.

---

[1] Doc. 10.

[2] Doc. 18.

[3] Doc. 25.

[4] Doc. 44.

[5] Doc. 94.

[6] Doc. 107.

## III. DISCUSSION

The dispute before the court is no longer an interpleader action. The third party which, fearing potential liability if the funds were paid to the wrong party, deposited the funds has been dismissed. Moreover, it is clear in hindsight that this case never really was about an obligation of the Park Service to pay $581,739.08 to Moran. The dispute is whether Carl Aase (and now his successor in interest) has any obligation to pay over the money to Moran upon receipt of a payment from the Park Service.

The money in the registry is money which the court has determined belongs to the Estate. The Estate is the only entity that could have any obligation to Moran; the Park Service has none. Analytically, then, the motions at bar present circumstances no different than those which would pertain if Moran had sued the Estate, lost, and then asked the court to order that the Estate's principal asset be frozen pending the outcome of the appeal. Indeed, those actually are the circumstances in this case.

Moran contends that if the court does not effectively freeze the Estate's principal asset, that asset may be spent before he can obtain appellate review. Moran, however, presents no evidence that such will happen. The argument is predicated only on statements made by counsel in motion papers. Even were there proof that the Estate will dissipate the money, what Moran is really asking this court to do is to issue a prejudgment attachment–that is, to attach the asset in anticipation of a reversal on appeal to be followed at some point by a judgment in favor of Moran. The procedure for such extraordinary relief is set out in Rule 64 of the Federal Rules of Civil Procedure.

Rule 64 incorporates the law of the state where the district court sits with respect to pre-judgment attachment and similar remedies.[7] Alaska Rule of Civil Procedure 89 sets forth the law of Alaska as it relates to pre-judgment attachments. To obtain such relief a litigant must show "by a preponderance of the evidence the probable validity of the plaintiff's claim for relief . . . and the absence of any reasonable probability that a

---

[7]Such incorporation may be limited or trumped by a federal statute where applicable. Neither party points to any federal statute which would apply in this case.

successful defense can be asserted by the defendant."[8]  Moran has made no effort to make such a showing.  Indeed, he could not do so, because judgment has already been entered on the basis that his claim has no merit.

## IV.  CONCLUSION

For the reasons set forth above, the Estate's motion at docket 102 is **GRANTED**, and Moran's motion at docket 108 is **DENIED**, and

**IT IS ORDERED**, that the Clerk of Court shall disburse the $581,739.08 on deposit in the registry of the court to the Estate of Carl Aase, together with interest thereon, less any charges or fees which may lawfully be deducted by the Clerk.

DATED at Anchorage, Alaska, this 28th day of July 2006.


/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT COURT JUDGE

---

[8]Ak. R. Civ. P. 89(d).